BARBARA H. HINSON v. WILLIAM W. JEFFERSON AND WIFE, ANNE C. JEFFERSON, AND MAE W. JEFFERSON

No. 743DC754

(Filed 18 December 1974)

1. Cancellation and Rescission of Instruments § 1— failure of consideration

Mere absence of consideration is not sufficient to warrant relief by way of equitable cancellation or rescission of an executed contract or deed in the absence of some additional circumstance creating an independent ground for granting cancellation or rescission, such as fraud or undue influence, but where a person has been induced to part with something of value for little or no consideration, equity will seize upon the slightest circumstance of fraud, duress, or mistake for the purpose of administering justice in a particular case; the same rule applies where there is a failure of consideration.

2. Cancellation and Rescission of Instruments § 4— lot sold for residential purposes — sewage disposal system unavailable — rescission proper

Where defendants gave plaintiff a deed for a lot, the deed contained restrictive covenants making it clear that both parties contemplated that the lot would be used solely for residential purposes,

Hinson v. Jefferson

after the contract was consummated it was determined that due to the proximity of the water level to the surface of the lot and certain drainage difficulties the lot would not support a septic tank or other on-site sewage disposal system, there was no municipal sewage disposal system available, and neither party knew at the time of the conveyance that the lot was incapable of supporting an on-site system, plaintiff was entitled to rescind the contract.

Judge CAMPBELL dissents.

APPEAL by plaintiff from *Phillips, Judge,* 11 July 1974 Session of District Court held in PITT County.

The controversy presented by this action was submitted on an agreed statement of facts as follows:

(a) This is an action by the plaintiff against the defendants for the recovery of the purchase price of $3,500 paid by the plaintiff to the defendants for a parcel or lot of land described in the complaint and for the cancellation of that certain deed whereby the defendants conveyed said lot or parcel of land to the plaintiff. The unverified answer of the defendants was duly filed.

(b) That by deed dated October 19, 1971, the defendants conveyed to the plaintiff a certain lot or parcel of land lying in Farmville Township, Pitt County, North Carolina, as particularly described in Deed Book J-40, page 365, of the Pitt County Public Registry and as described in the complaint of the plaintiff, said parcel of land fronting 200 feet on State Road #1200 by 300 feet deep.

(c) That the conveyance by the defendants to the plaintiff contained the following restrictive covenants which run with the lot or parcel of land conveyed as follows:

1. The above described lot or parcel of land shall be used for residential purposes only and no residence constructed thereon shall cost less than $25,000.00 based on cost prevailing in the County of Pitt, State of North Carolina, as of October 1, 1971; further, no residence shall be built upon the above described lot or parcel of land unless and until the plans and specifications therefor are approved in writing by William W. Jefferson and wife, Anne C. Jefferson, or the survivor, provided, however, that said plans and specifications need be approved only for the first residence built upon the above described lot or parcel of land.

Hinson v. Jefferson

2. No trailer, mobile home, basement, tent, shack, garage, barn or other outbuilding erected on the above described lot or parcel of land shall at any time be used as a residence, either temporarily or permanently.

3. No building shall be located on the above described lot or parcel of land nearer than 50 feet to the front lot line nor nearer than 20 feet from any side lot line.

4. No noxious or offensive trade or activity shall be carried on upon the above described lot or parcel of land nor shall anything be done thereon which may be or become an annoyance or nuisance. No signs or billboard shall be erected or maintained on the premises. No trade materials or inventories may be stored upon the premises and no trucks or tractors may be stored thereon. Further, said lot or parcel of land shall at all times be neat and clean in appearance and not allowed to be and become unsightly.

5. The lot or parcel of land hereinabove described shall not be subdivided into smaller building lots or parcels of land.

(d) That prior to and at the time of the conveyance by the defendants to the plaintiff of the subject parcel or lot of land, the defendants and the plaintiff contemplated that the plaintiff would construct a home or residence on said lot or parcel of land and that the plaintiff actually prepared to build a home or residence on said lot or parcel of land of the type the plaintiff discussed with the defendants prior to the conveyance of the subject lot and according to the plans approved by the defendants subsequent to the purchase of the subject lot.

(e) That the lot or parcel of land conveyed by the defendants to the plaintiff is located about one mile west of Joyner's Crossroads on State Road #1200, a rural community, to which a municipal sewage disposal system is not now available. That any sewage disposal system for a residence constructed on the subject lot would require the use of a septic tank or an on-site sewage disposal system.

(f) That when plaintiff was ready to commence construction of a proposed residence on the subject lot and before construction commenced, the Environmental Health Division of the Pitt County Health Department on Decem-

ber 27, 1972, pursuant to an examination of said lot performed by Mr. W. C. Haislip under the supervision of its Chief of Sanitation, Mr. W. M. Pate, in March 1972, certified that said lot would not support a septic tank or on-site sewage disposal system for that it was noted that the area has a drainage problem and is subject to flooding and would not support a septic tank or on-site sewage disposal system which would comply with the regulations governing sewage disposal systems in Pitt County, adopted by the Pitt County Board of Health on March 1, 1972, with the regulations adopted by the Pitt County Board of Health on the 1st day of February, 1953, as amended, the latter being in effect on October 19, 1971, and the ordinances of the County of Pitt. That on the 16th day of February, 1972, Charles R. Vandiford, an employee of the United States Department of Agriculture, Soil Conservation Service, Greenville, Pitt County, North Carolina, under the supervision of District Conservationist, Roy R. Beck, conducted an evaluation of the subject lot, the result of which disclosed that the subject lot is only 2.6 feet above the water level of Black Swamp, and subject to overflow, and has a very severe drainage problem which said condition can be corrected by extensive drainage procedures including as a necessary part thereof channel improvements to Black Swamp and Little Contentnea Creek at a prospective cost of several hundred thousand dollars. That these facts so determined and the conditions of the subject lot were true and the same on October 19, 1971, the date of the sale and transfer of the subject lot to the plaintiff by the defendants.

(g) That due to the determination of the Environmental Health Division of the Pitt County Health Department the subject lot would not support a septic tank or on-site sewage disposal system in its present condition, a permit to install a septic tank or on-site sewage disposal system was denied pursuant to the regulations governing sewage disposal in Pitt County adopted by the Pitt County Board of Health, March 1, 1972, the ordinances of Pitt County, and to the regulations of the Pitt County Board of Health, adopted February 1, 1953, as amended, if applied.

(h) That by reason of the denial by the Environmental Division of Pitt County Health Department to the plaintiff of a permit to construct a septic tank or on-site sewage

disposal system on said lot, the plaintiff did not construct a residence on said lot and since the correction of the condition inhibiting the construction of a septic tank and on-site sewage disposal system on the subject lot could not be achieved except through an expenditure of funds of several hundred thousand dollars, the plaintiff demanded the refund of the purchase price paid by the plaintiff to the defendants for said lot in exchange for a reconveyance by the plaintiff to the defendants of said lot.

(i) Defendants declined the plaintiff's offer and refused plaintiff's demand.

(j) That the purchase price of said lot paid by the plaintiff to the defendants was $3,500.00.

(k) That prior to and at the time of the conveyance of said lot by the defendants to the plaintiff, neither the defendants nor the plaintiff knew that said lot would not support a septic tank or on-site sewage disposal system and did not know such fact until the evaluation of said lot was made by the United States Soil Conservation Service of the Department of Agriculture and the Environmental Health Division of the Pitt County Health Department determined such to be true.

(l) That there was no allegation by the plaintiff in her complaint of fraud or misrepresentation on the part of the defendants and the plaintiff does not contend that the defendants were guilty of any fraud or misrepresentation with respect to the condition of the aforesaid lot prior to or at the time of the conveyance of said lot by the defendants to the plaintiff, but on the contrary the defendants in conveying said lot to the plaintiff were totally unaware of any drainage or other soil condition respecting said lot which would or might prohibit the use of a septic tank or other on-site sewage system thereon.

(m) That the Environmental Health Division of the Pitt County Health Department determined, "That this lot is not suitable for residential building purposes and does not meet County Health requirements."

(n) That the deed of conveyance contained no covenant of warranty that the lot or parcel of land conveyed was suitable for the on-site construction of a residence.

The deed referred to in the statement of facts is set out in the record and contains the usual covenants of seizen and warranty against encumbrances "except for restrictive covenants hereinabove referred to and set out."

The trial court concluded that plaintiff is entitled to no relief, and plaintiff appeals from judgment dismissing the action.

*Everett & Cheatham, by C. W. Everett, for plaintiff appellant.*

*Gaylord and Singleton, by Mickey A. Herrin, for defendant appellees.*

BRITT, Judge.

Did the trial court err in entering judgment for defendants? We hold that it did.

Plaintiff argues that judgment should have been rendered in her favor for the reason that the deeds from defendants to her constituted a contract, that a mutual mistake of a material fact existed at the time the contract was entered into and consummated, and that the mutual mistake was accompanied with a failure of consideration.

While our research has failed to disclose a case in this jurisdiction directly in point with the instant case, we think a rational extension of the principle established in *MacKay v. McIntosh*, 270 N.C. 69, 153 S.E. 2d 800 (1967), would be proper. In *MacKay*, plaintiff owner and defendant purchaser entered into a contract for the sale and purchase of a lot upon which was a brick building; defendant's sole interest in the property was to use the building as a retail store and she so advised plaintiff's agent; defendant was induced to sign the contract by the agent's representation that the property was in a zone where retail business was permitted; and both the agent and defendant acted pursuant to their mistaken belief that the representation with regard to zoning was true when in fact it was false. The owner brought suit for specific performance. In affirming a judgment for defendant, the Supreme Court said (page 73):

> Defendant does not seek to contradict the writing or to enforce a parol agreement. She contends that, since both Mrs. Cooper (plaintiff's agent) and defendant negotiated

and acted in the honest but mistaken belief the subject property was in fact zoned for business, no contract, either written or oral, resulted; and that, there being no agreement, she is not obligated to purchase property which cannot be used for a retail store.

"The formation of a binding contract may be affected by a mistake. Thus, a contract may be avoided on the ground of mutual mistake of fact where the mistake is common to both parties and by reason of it each has done what neither intended. Furthermore, a defense may be asserted when there is a mutual mistake of the parties as to the subject matter, the price, or the terms, going to show the want of a consensus *ad idem*. Generally speaking, however, in order to affect the binding force of a contract, the mistake must be of an existing or past fact which is material; it must be as to a fact which enters into and forms the basis of the contract, or in other words it must be of the essence of the agreement, the *sine qua non*, or, as is sometimes said, the efficient cause of the agreement, and must be such that it animates and controls the conduct of the parties." 17 Am. Jur. 2d, Contracts § 143.

A deed, duly signed, sealed and delivered, is an executed contract. *Edwards v. Batts,* 245 N.C. 693, 97 S.E. 2d 101 (1957). While the holding in *MacKay* dealt with an executory contract, we think the principle is also applicable to an executed contract. "A mutual mistake of such a character as to affect the validity of an executory agreement ordinarily affects the validity of an executed agreement." 17 Am. Jur. 2d, Contracts, § 143.

[1] It appears to be a generally recognized rule that mere absence of consideration is not sufficient to warrant relief by way of equitable cancellation or rescission of an executed contract or deed in the absence of some additional circumstance creating an independent ground for granting cancellation or rescission, such as fraud or undue influence; but where a person has been induced to part with something of value for little or no consideration, equity will seize upon the slightest circumstance of fraud, duress, or mistake for the purpose of administering justice in a particular case. 13 Am. Jur. 2d, Cancellation of Instruments, § 21, page 515.

With respect to consideration, we find in 13 Am. Jur. 2d, Cancellation of Instruments, § 22, pp. 515-6, the following:

> Failure of consideration differs from lack of consideration in that it refers to something subsequent to the agreement, and not to something inherent in the agreement itself. Failure of consideration, like lack of consideration, is not generally considered a sufficient ground for equitable cancellation of an instrument in the absence of some additional circumstance independently justifying this relief, such as fraud, duress, or mistake. But, as in the case of lack of consideration, where there is a failure of consideration equity will seize upon the slightest circumstance of an inequitable nature for the purpose of administering justice in the particular case.

And in § 31, pp. 523-4, we find:

> Equity may decree cancellation of an instrument on the ground of mistake of fact whether the instrument relates to an executory agreement or to one that has been executed. A mistake warranting cancellation must affect the substance of the contract and be more than a mere incident of the agreement. It must be made to appear that the fact concerning which the mistake was made was one that animated and controlled the conduct of the party on whose behalf the cancellation is sought, and that but for that mistake he would not have executed the instrument involved . . . .

[2] We now apply the stated principles to the facts presented in the case at bar. The inclusion of the restrictive covenants in the deed from defendants to plaintiff leaves no doubt that the parties contemplated that the lot in question would be used solely for residential purposes, and that only a substantial residence would be erected on the lot. After the contract was consummated, it was determined that due to the proximity of the water level to the surface of the lot, and certain drainage difficulties, the lot would not support a septic tank or other on-site sewage disposal system. This being true, and no municipal sewage disposal system being available, there is no feasible way the lot can be utilized for the purpose contemplated by the parties. Neither the plaintiff nor the defendants knew, at the time of the conveyance, that the lot was incapable of supporting a septic tank or other on-site sewage disposal system.

Hinson v. Jefferson

The mistake shared by the parties related to a *material* fact, one which entered into and formed a basis of the contract, one which was of the essence of the agreement, and one which "animated and controlled" the conduct of the parties. Inasmuch as plaintiff's use of the property is restricted to residential purposes, it is virtually worthless to plaintiff.

In *MacKay*, the mistake was an unintentional false representation; in this case, the mistake was a false assumption. There is more reason for equity to intervene in this case than there was in *MacKay*; in that case, the property could have been put to some profitable use but that is not true here. Defendants argue in this case that plaintiff could have determined before consummating the sale that the lot would not support a septic tank or on-site sewage system by having a qualified person perform a soil test. In *MacKay*, a telephone call to the city hall no doubt would have revealed that zoning regulations would not permit retail business on the subject property.

In 5 Strong, N. C. Index 2d, Money Received, § 1, page 524, it is said: "Where a party pays in good faith, in ignorance of the facts, a sum of money for certain property, rights or interests, which in fact are worthless so that there is a total failure of consideration, the money paid may be recovered under the principles of justice. . . ."

We hold that plaintiff is entitled to rescind the contract. Upon tender of a deed to defendants, reconveying to them the lot free of any encumbrances placed thereon since the conveyance by defendants, plaintiff is entitled to recover from defendants the $3,500 purchase price.

The judgment appealed from is vacated and this cause is remanded to the district court for entry judgment consistent with this opinion.

Remanded.

Judge VAUGHN concurs.

Judge CAMPBELL dissents.