CLARK TRUCKING OF HOPE MILLS, INC. v. LEE PAVING COMPANY

No. 9212SC148

(Filed 16 February 1993)

1. **Quasi Contracts and Restitution § 2.1 (NCI3d)— unjust enrichment—use of subcontractor's bid to win contract— subcontractor not used on project**

   The trial court did not err by granting summary judgment for defendant, a general contractor, on plaintiff subcontractor's claim for unjust enrichment arising from defendant's failure to use plaintiff's services after including plaintiff's bid in the general contractor's bid on a road project. Plaintiff rendered no services to defendant, and subcontractor's bids in North Carolina are not viewed as sufficient consideration to support an implied contract between the contractor and subcontractor.

   **Am Jur 2d, Restitution § 3.**

2. **Unfair Competition § 1 (NCI3d)— unfair trade practices—use of subcontractor's bid to win project—subcontractor not used on project**

   The trial court did not err by granting summary judgment for defendant prime contractor in an action arising from a road construction project where plaintiff alleged unfair trade practices in that plaintiff submitted a bid to defendant as a Minority Business Enterprises (MBE) subcontractor; defendant was required to employ MBEs and Disadvantaged Business Enterprises (DBEs), which includes MBEs; defendant was required to list DBEs included and the total dollar volume in the bid; defendant discovered after winning the bid that it could obtain a better price for stone aggregates from a different quarry; plaintiff quoted a new, higher price, although the distance from both quarries to the job site was essentially the same; and defendant notified plaintiff and DOT that plaintiff would not act as subcontractor for the project. Defendant continued to meet DOT goals even without plaintiff's bid as an MBE, the general contractor is not obligated to award the job to a subcontractor listed in the general bid, and there was no evidence in this case of a contract in a prior agreement as to the bid price and the promise of the work to the subcontractor if the general contractor were awarded the project.

CLARK TRUCKING OF HOPE MILLS v. LEE PAVING CO.

[109 N.C. App. 71 (1993)]

**Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices §§ 696 et seq.**

3. **Highways, Streets, and Roads § 7 (NCI4th)— highway construction—Minority Business Enterprise included in bid— not included in project—no statutory violation**

There was no violation of N.C.G.S. § 136-28.4 where plaintiff subcontractor, a Minority Business Enterprise, submitted a bid to defendant general contractor for a highway project; defendant included plaintiff's bid in the general bid; defendant discovered after winning the bid that stone aggregate could be obtained at a better price from a different quarry; plaintiff quoted a higher price, although the distance between the quarries and the project was essentially the same; and plaintiff was not included in the project. Although defendant is required by N.C.G.S. § 136-28.4 to use MBEs, an MBE/EEO Contract Compliance Review of this project was conducted by the External EEO Section of DOT and defendant was informed that it was in compliance.

**Am Jur 2d, Civil Rights §§ 4, 261.**

4. **Contracts § 140 (NCI4th)— highway construction— subcontractor's bid included in general bid—subcontractor not used on project—no contract between prime and sub**

The trial court did not err by concluding that there was no contract between defendant prime contractor and plaintiff Minority Business Enterprises (MBE) subcontractor where plaintiff submitted a bid which defendant included in the successful general bid, but plaintiff was not used on the project. MBEs may secure a contract for performance prior to the bidding process conditioned on the prime contract being awarded to the general contractor.

**Am Jur 2d, Contracts §§ 115, 142, 172.**

Appeal from order entered 13 September 1991, by Judge George R. Greene in Cumberland County Superior Court. Heard in the Court of Appeals 12 January 1993.

*Safran Law Offices, by Perry R. Safran, for plaintiff-appellant.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Robert W. Kaylor, for defendant-appellee.*

CLARK TRUCKING OF HOPE MILLS v. LEE PAVING CO.

[109 N.C. App. 71 (1993)]

JOHNSON, Judge.

Plaintiff, Clark Trucking of Hope Mills, Inc. (Clark), instituted this action on 17 October 1990 for restitution in quasi-contract and for damages under North Carolina General Statutes § 75-1.1 (1988). Defendant, Lee Paving Company (Lee), filed for a motion of enlargement of time on 8 November 1990, and answered on 10 December 1990. On 29 August 1991, defendant filed a motion for summary judgment. On 13 September 1991, summary judgment was granted in defendant's favor. Plaintiff appeals.

On 17 April 1990, the North Carolina Department of Transportation (DOT) accepted bids on Project 8.T521201F-67-2(27) which is located at US-421 Bypass from north of US-64 to south of US-421 Business near Siler City. The Project is a public job which requires the employment of Disadvantaged Business Enterprises (DBE), which also include Minority Business Enterprises (MBE). Clark is a MBE under North Carolina law.

On or before 17 April 1990, Clark was asked by Lee to submit a bid for the hauling of stone aggregates from Martin Marietta's Lemon Springs Quarry to the Project. Clark submitted to Lee a bid of $2.60 per ton hauled. On 17 April 1990, Lee submitted a $4,984,713.31 bid to DOT for the Project. Lee attached to the bid the schedule of DBE's that would perform work on the Project, as contractors seeking to bid on DOT contracts are required to list the DBE's and the total dollar volume under the bid in order for the bid to be responsive. Clark was listed as an MBE on Lee's bid and its total volume properly noted.

On 8 May 1990, Lee was awarded the contract for the Project based on the bid submitted on 17 April 1990. While making arrangements for performance under the contract, Lee discovered that it could obtain a better price for stone aggregates from Moncure Quarry. Lee contacted Clark and asked whether Clark's bid was effective in light of the change in quarries. Although the distance from both quarries to the Project job site was essentially the same, Clark quoted a new bid price of $2.75 per ton. Lee then notified Clark and DOT that Clark would not act as subcontractor for the project. In spite of plaintiff's removal from the list of DBE's, Lee maintained sufficient DBE participation on the Project to meet the Special Provisions Goals.

**[1]** On appeal, plaintiff-appellant brings forth four assignments of error. Appellant first assigns as error the trial court's holding that there was a complete absence of law and fact necessary to support plaintiff's claim for restitution under the theory of unjust enrichment. Clark contends that Lee was unjustly enriched through the use of Clark's subcontractor bid in the general contractor bid. We disagree.

Unjust enrichment is "based upon the equitable principle that a person should not be permitted to enrich himself unjustly at the expense of another. However, this rule does not apply when the services are rendered gratuitously[.]" *Atlantic Coast Line R. Co. v. Highway Commission*, 268 N.C. 92, 96, 150 S.E.2d 70, 73 (1966). Moreover, quantum meruit is an equitable principle that allows for recovery for services based upon an implied contract. In order to recover in quantum meruit, plaintiff must show: (1) that services were rendered to defendants; (2) that the services were knowingly and voluntarily accepted; and (3) that the services were not given gratuitously. *Johnson v. Sanders*, 260 N.C. 291, 132 S.E.2d 582 (1963).

Plaintiff cannot recover on its claim because it has rendered no services to Lee, and subcontractors' bids in this State are not viewed as sufficient consideration to support an implied contract between the contractor and the subcontractor. *See Home Electric Co. v. Hall and Underdown Heating and Air Cond. Co.*, 86 N.C. App. 540, 358 S.E.2d 539 (1987), *aff'd*, 322 N.C. 107, 366 S.E.2d 441 (1988) (Subcontractor's alleged promise to perform duct work for contractor who submitted bid in reliance on promise was not an enforceable contract absent consideration.). In merely submitting his bid,

> the subcontractor does not rely on the general and suffers no detriment. A subcontractor submits bids to all or most of the general contractors that it knows are bidding on a project. The subcontractor receives invitations to bid from some generals and submits bids to others without invitation. The time and expense involved in preparing the bid is not segregated to any particular general. The total cost is part of the overhead of doing business. The same bid is submitted to each general. Thus, whether or not any particular general wins the contract is of little or no concern to the subcontractor.

*Holman Erection Co. v. Orville E. Madsen & Sons, Inc.*, 330 N.W.2d 693, 698 (Minn. 1983).

Summary judgment is proper where there is an absence of law to support the claim made, there is an absence of fact sufficient to support the claim, or there is a disclosure of some fact which will defeat the claim. *Home Electric Co.*, 86 N.C. App. at 540, 358 S.E.2d at 539. In this case, the facts do not support a claim of unjust enrichment nor does the law of this State. This assignment is overruled.

**[2]** Plaintiff's second assignment of error alleges that there was a genuine issue of material fact in his claim for damages under North Carolina General Statutes § 75-1.1 for unfair trade practices. Plaintiff contends that "Lee unfairly asserted its position by adopting Clark's bid volume and MBE status to gain the prime contract and then changed quarries and refused to contract with Clark." Having reviewed the record, we find no cognizable claim of unfair or deceptive trade practices.

The record shows that even without Clark's bid as an MBE, Lee continued to meet the DOT goals. After Lee discovered that it could obtain stone cheaper at Moncure Quarry, which is essentially the same distance from the Project site as the quarry initially chosen, Lee asked Clark if its bid was still effective. Clark responded that it was not. Defendant-Lee then informed DOT and plaintiff that plaintiff-subcontractor would be replaced. The DOT found that defendant continued to meet the required goals, and no adverse action was taken against defendant. These facts and the surrounding circumstances do not support a claim of unfair trade practice, which is a practice that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *Jennings Glass Co. v. Brummer*, 88 N.C. App. 44, 52, 362 S.E.2d 578, 584 (1987), *review denied*, 321 N.C. 473, 364 S.E.2d 921 (1988).

The law also fails to support plaintiff's claim for unfair trade practices. Although a general contractor lists a subcontractor in its general bid, "the general contractor is not obligated to award the job to that subcontractor. The general contractor is still free to shop around between the time he receives the subcontractor's bid and the time he needs the goods or services, to see if he can obtain them at a lower price." *Home Electric Co.*, 86 N.C. App. at 545, 358 S.E.2d at 542.

We also note that plaintiff's reliance on *Bridgeport Restoration Co., Inc. v. A. Petrucci Constr. Co.*, 211 Conn. 230, 557 A.2d 1263 (1989), is misplaced. The *Bridgeport* Court affirmed the award of damages to the subcontractor for breach of contract and unfair and deceptive trade practices where the contractor, who listed the contractor as an MBE and won the bid, sought further adjustments in the subcontract. In *Bridgeport*, "[t]he court specifically found that the plaintiff's president and an authorized agent of the defendant agreed on a bid price of $400,000 in telephone negotiations before the defendant submitted its bid on the contract to the transit district. The court also found that at that point the defendant's project manager told the president of the plaintiff company that if the defendant were awarded the contract the plaintiff would get the subcontract. After the defendant was awarded the contract it sought further adjustments in the subcontract that were refused by the plaintiff. Thereafter, the defendant awarded the subcontract to a different qualified bidder." *Id.* at 231, 557 A.2d at 1264.

The case at bar is distinguishable, because, unlike *Bridgeport*, there is no evidence of a contract in a prior agreement as to the bid price and the promise of the work to the subcontractor if the general contractor were awarded the project. We find no reason to differentiate between Clark's bid as an MBE and any other subcontractor's bid. Both have the ability to protect themselves in the bidding process as did the plaintiff in *Bridgeport*. This assignment is overruled.

[3] Plaintiff's third assignment of error alleges that a genuine issue of material fact exists as to whether defendant's conduct violated North Carolina General Statutes § 136-28.4 (1986), which states that "[i]t is the policy of this State to encourage and promote the use of small, minority, physically handicapped and women contractors in the construction, alteration and maintenance of State roads, streets, highways, and bridges and in the procurement of materials for such projects." We have considered this assignment and find it meritless also.

The DOT, Office of Civil Rights, has in place, written procedures to implement the policy set forth in North Carolina General Statutes § 136-28.4. The document is entitled Program for Participation by Disadvantaged Business Enterprises in the North Carolina Department of Transportation's Federally Assisted Programs (1990).

In a letter dated 18 October 1990, L. Richard Chrisawn, Chief of the External EEO Section of the DOT, informed Lee that on 2 October 1990, an MBE/EEO Contract Compliance Review was conducted on the Project now in issue. The letter indicated that defendant Lee was in compliance with the DOT requirements. Accordingly, we do not find a statutory violation. No error.

[4] By his fourth assignment of error, plaintiff argues that the trial court erred in its conclusion of law that there was no contract between plaintiff and defendant. Further, plaintiff urges this Court to hold that "a contract should exist when the prime bid, that lists the MBE as a sub-contractor, is responsive and accepted by the State unless the sub-bid is not responsive to the plans and specifications embodied in the overall project or the subcontractor is shown to be unreliable or incapable of performing his side of the bargain." We decline to so hold, recognizing the MBE's ability to secure a contract for performance, prior to the bidding process, conditioned upon the prime contract being awarded to the general contractor. We also note that the argument appellant makes is better suited to the legislature of this State. This assignment is overruled.

The decision of the trial court is affirmed.

Judges GREENE and MARTIN concur.