LLOYD HINSON, Plaintiff v. UNITED FINANCIAL SERVICES, INC., Defendant

No. COA95-459

(Filed 6 August 1996)

**1. Quasi Contracts and Restitution § 13 (NCI4th)— note and deed of trust—threat of criminal prosecution—unjust enrichment inapplicable**

Plaintiff failed to state a claim for restitution based on unjust enrichment where he alleged that a note and deed of trust, now paid, were procured by a threat of criminal prosecution because any restitutionary remedy would lie in contract law and not in equity.

**Am Jur 2d, Damages § 55; Restitution and Implied Contracts §§ 2, 3, 14.**

**Threatening, instituting, or prosecuting legal action as invasion of right of privacy. 42 ALR3d 865.**

**Initiating, or threatening to initiate, criminal prosecution as ground for disciplining counsel. 42 ALR4th 1000.**

**2. Limitations, Repose, and Laches § 38 (NCI4th)— note and deed of trust—threat of criminal prosecution—rescission for duress—beginning of limitations period**

The three-year statute of limitations for plaintiff's claim for rescission of a note and deed of trust for duress based on the allegation that they were improperly procured by the threat of criminal prosecution began to run on the date the note and deed of trust were signed where plaintiff had knowledge of the wrongfulness of the transaction on that date in that he had previously been advised by an attorney that the transaction was against public policy. The payee's expectation that payments would be made in accordance with the note and its sending of late notices to the plaintiff did not constitute a continuing wrong which extended the limitations period in a fashion similar to the continuing course of treatment doctrine applicable to medical malpractice actions. N.C.G.S. § 1-52(1) and (9).

**Am Jur 2d, Duress and Undue Influence § 23; Limitation of Actions § 177.**

**What statute applies to an action, based on duress, to recover money or property. 77 ALR2d 821.**

**Reliance on statute of limitations. 43 ALR3d 756.**

Appeal by plaintiff from order granting summary judgment to defendant entered 15 February 1995 by Judge Dexter Brooks in Columbus County Superior Court. Heard in the Court of Appeals 31 January 1996.

*Armstrong & Armstrong, P.A., by L. Lamar Armstrong, Jr., for plaintiff appellant.*

*Robinson, Bradshaw & Hinson, P.A., by J. Daniel Bishop and A. Todd Capitano, for defendant appellee.*

SMITH, Judge.

Plaintiff assigns error to the trial court's grant of summary judgment for defendant on grounds that plaintiff's claims are time barred by the applicable statutes of limitation. The instant case presents the question of when applicable statutes of limitation begin to run on a note and deed of trust allegedly procured by threat of criminal prosecution, when plaintiff seeks to void said note, recover funds

expended toward the note, and receive further damages based on defendant's conduct in procuring the note.

We find that the statutes of limitation on plaintiff's claims began to run on the date of the original injury, *viz*, when the alleged wrongful procurement of the note occurred. Thus, it is apparent that plaintiff is not entitled to recover on any of his claims.

The events giving rise to plaintiff's cause of action arose in March of 1990. At that time plaintiff's former wife, Deborah Hinson (now Chavis), was employed in Laurinburg, North Carolina as a branch manager for United Financial Services, Inc. (UFS), a consumer finance company. Deborah Hinson's job responsibilities included loan closings and approvals. At some point in her employment with UFS, Deborah Hinson began using fictitiously generated loans to cover existing loans that had become delinquent. The false loans were discovered by UFS in March of 1990. Thereafter, UFS terminated Deborah Hinson's employment, and demanded repayment of the misappropriated funds.

Discussions between UFS officials, plaintiff, and Deborah Hinson ensued. These discussions centered on Deborah Hinson's liability for the repayment of the improperly used funds, and potential criminal liability for what she had done. UFS allegedly threatened to "criminally indict" Deborah Hinson, and this threat was used as negotiating leverage to resolve the situation in UFS's favor. UFS promised the Hinsons that, if they would sign a note and deed of trust providing for repayment, no criminal charges would be brought by UFS against Deborah Hinson.

Fearing criminal charges, the Hinsons immediately sought the assistance of an attorney in Laurinburg, Kenneth S. Etheridge (Etheridge). After presentation of their predicament to the attorney, the Hinsons directed Etheridge to draft a promissory note (note) and deed of trust sufficient to satisfy the demands of UFS. Etheridge "emphatic[ally]" explained to the Hinsons "that regardless of what had transpired, [they] had no legal obligation to repay any monies, and [they] should not sign any note or deed of trust." Further, Etheridge "told them that any agreement that [the Hinsons] would enter into with [UFS] for bearing [*sic*] to bring criminal action in exchange for whatever consideration was not an enforceable document." *See, e.g., Gillikin v. Whitley*, 66 N.C. App. 694, 697, 311 S.E.2d 677, 679 (1984).

Despite the advice of counsel, the Hinsons directed Etheridge to draft the note and deed of trust so as to avoid UFS's promise to escalate the situation into a criminal matter if no repayment occurred. The Hinsons then signed the note on 15 March 1990, obligating repayment to UFS, and recorded the accompanying deed of trust on the Hinson marital home. Then in the spring and summer of 1991, the Hinsons fell behind in their note payments. In response, UFS sent a letter urging the Hinsons to restore their account to current status and demanding payment of sums due.

Approximately three years later plaintiff moved to Whiteville, North Carolina, at which time he asked UFS to transfer its deed of trust lien to his new home. Otherwise, plaintiff would be forced to pay off the loan balance upon sale of the marital home. UFS refused. Plaintiff went ahead with the sale of the home, and with the proceeds plaintiff paid off the note and extinguished the lien on 10 June 1994. Just over one month later, on 13 July 1994, plaintiff initiated the lawsuit at the heart of the instant appeal.

In order to prevail on a summary judgment motion, the moving party (here defendant) must show either "(1) 'an essential element of plaintiff's claim is nonexistent . . . [2] plaintiff cannot produce evidence to support an essential element of his claim, or . . . [3] plaintiff cannot surmount an affirmative defense which would bar the claim.'" *Clark v. Brown*, 99 N.C. App. 255, 260, 393 S.E.2d 134, 136-37 (quoting *Shuping v. Barber*, 89 N.C. App. 242, 244, 365 S.E.2d 712, 714 (1988)), *disc. review denied*, 327 N.C. 426, 395 S.E.2d 675 (1990). The trial court must construe all evidence in the light most favorable to the nonmoving party, allowing the nonmoving party all favorable inferences as to the facts. *Moye v. Gas Co.*, 40 N.C. App. 310, 314, 252 S.E.2d 837, 841, *disc. review denied*, 297 N.C. 611, 257 S.E.2d 219 (1979).

Defendant prevailed on its motion for summary judgment because it successfully raised the affirmative defenses of the statutes of limitation. The central question on appeal is whether the trial court properly found that, as a matter of law, plaintiff's claims were time barred. Plaintiff's complaint alleges three causes of action as grounds for relief, duress, unjust enrichment, and unfair and deceptive trade practices (N.C. Gen. Stat. § 75-16 (1988)).

We note that "duress" is not, in and of itself, a proper cause of action. However, pursuant to our rules of notice pleading, we recognize plaintiff's "duress" claim as really one for rescission *based* on

duress. *See Hinson v. Jefferson*, 24 N.C. App. 231, 237, 210 S.E.2d 498, 502 (1974). Plaintiff's cause of action for unjust enrichment is similarly flawed. It seems obvious that the cause of action plaintiff intended was for restitution based on unjust enrichment. *See Clark Trucking of Hope Mills v. Lee Paving Co.*, 109 N.C. App. 71, 74, 426 S.E.2d 288, 289 (1993).

**[1]** Unjust enrichment is "based upon the equitable principle that a person should not be permitted to enrich himself unjustly at the expense of another." *Atlantic Coast R.R. v. Highway Commission*, 268 N.C. 92, 96, 150 S.E.2d 70, 73 (1966). " '[A] person who has been unjustly enriched at the expense of another is required to make restitution to the other.' " *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 555-56, (citation omitted), *reh'g denied*, 323 N.C. 370, 373 S.E.2d 540 (1988). "A claim of this type is neither in tort nor contract but is described as a claim in quasi contract or a contract implied in law." *Id.* at 570, 369 S.E.2d at 556.

The hallmark rule of equity is that it will not apply "in any case where the party seeking it has a full and complete remedy at law." *Jefferson Standard Insurance Co. v. Guilford County*, 225 N.C. 293, 300, 34 S.E.2d 430, 434 (1945). The upshot of this analysis is that plaintiff's awkwardly pled equitable restitution claim is inapplicable under the facts of this case. Where, as here, there is a contract which forms the basis for a claim, "the contract governs the claim and the law will not imply a contract." *Shadrick*, 322 N.C. at 570, 369 S.E.2d at 556. Thus, plaintiff's restitutionary remedy, if there were to be one, would lie in contract law, not equity. For this reason alone, analysis of plaintiff's quasi-contract claim against defendant's affirmative defense of statute of limitation is unnecessary and improper. As a result, we consider only the continued viability of plaintiff's claims for rescission of the note and deed of trust, and plaintiff's claim for unfair and deceptive trade practices against defendant.

**[2]** Plaintiff's rescission claim for alleged duress is governed by N.C. Gen. Stat. § 1-52(9) (1983), which sets the statutes of limitation at three years for actions grounded in fraud or mistake. *Biesecker v. Biesecker*, 62 N.C. App. 282, 285-86, 302 S.E.2d 826, 829 (1983) (an action to void a deed for duress barred after three years where grantor knew of threats at time of signing); *Swartzberg v. Reserve Life Insurance Co.*, 252 N.C. 150, 156, 113 S.E.2d 270, 277 (1960). The *Swartzberg* Court held that § 1-52(9) is to be used " 'in [a] broad sense, to apply to all actions, both legal and equitable, where fraud is

an element, and to all forms of fraud, including deception, imposition, *duress*, and undue influence.' " *Swartzberg*, 252 N.C. at 156, 113 S.E.2d at 277 (emphasis added) (citation omitted). Even assuming, *arguendo*, that strict contract principles governed the rescission claim, the same three-year limitation would apply. N.C. Gen. Stat. § 1-52(1). Finally, we note that plaintiff's unfair and deceptive trade practice claim is subject to a four-year statute of limitation. N.C. Gen. Stat. § 75-16.2 (1994).

With the appropriate statutes of limitation so stated, plaintiff's causes of action necessarily pivot on a determination of the date the relevant statutes of limitation began to run. In this state, speaking generally, a statute of limitation begins to run as soon as the right to sue arises. *Thurston Motor Lines, Inc. v. General Motors Corp.*, 258 N.C. 323, 325, 128 S.E.2d 413, 415 (1962). Plaintiff's rescission claim based on duress arose at the moment of " 'discovery by the aggrieved party of the facts constituting the fraud or mistake.' " *Swartzberg*, 252 N.C. at 156, 113 S.E.2d at 276 (quoting N.C. Gen. Stat. § 1-52(9)); *Biesecker*, 62 N.C. App. 282, 285-86, 302 S.E.2d 826, 829.

When the instant plaintiff's claims of duress are measured against this discovery rule, it is manifest that plaintiff's claim on this score is not timely. There are at least two points at which plaintiff must have known that he had been wronged. First, plaintiff's deposition indicates he was present at a meeting with UFS officials in March 1990, when the alleged threats of criminal prosecution were made to his (now former) wife. These threats led plaintiff and his wife to immediately seek out counsel.

Second, plaintiff's attorney advised the Hinsons that the note and deed were against public policy, and strenuously encouraged the Hinsons to reject UFS's terms. The Hinsons chose to disregard this advice and proceeded to sign the note and abide by its obligations. Viewed in the light most favorable to plaintiff, it is manifest that plaintiff had actual knowledge of the wrongfulness of this transaction on 15 March 1990, when the note and deed of trust were signed. Because UFS's threat of criminal prosecution occurred prior to 15 March 1990, this potential additional wrongful act does not assist plaintiff's argument. Since the complaint in the instant case was not filed until 13 July 1994, plaintiff's cause of action for rescission based on duress is barred, as it was filed over four years after the wrongful act at issue.

Plaintiff's attempt to equate the singular wrong involved in the procurement of the note, with wrongs applicable to the continued

course of treatment doctrine in medical malpractice actions, is misplaced. *See Johnson Neurological Clinic v. Kirkman*, 121 N.C. App. 326, 330, 465 S.E.2d 32, 34 (1996) (right of action in tort arising from continuous medical treatment for same or similar injury accrues at the conclusion of that treatment). UFS's expectation that payments would be made in accordance with the note, as manifested by late notices to the Hinsons, is in no way the same as a situation "where a physician is retained to render continuous and related services, usually related to a particular affliction, [so as to be a] contract for medical services . . . deemed to be an indivisible contract . . . ." *Id.* Sending a late notice is, at worst, an ill effect of the original wrong and is not a wrong in and of itself. Plaintiff's analogies to gasoline seepage, *et al.*, such as to *Wilson v. McLeod Oil*, 327 N.C. 491, 398 S.E.2d 586 (1990), *reh'g denied*, 328 N.C. 336, 402 S.E.2d 844 (1991), are equally flawed.

Plaintiff's claim for unfair and deceptive trade practices fares no better. This Court has previously determined that a cause of action for unfair and deceptive trade practices under N.C. Gen. Stat. § 75-16 (1994) accrues when " 'the right to institute and maintain a suit arises.' " *Barbee v. Atlantic Marine Sales & Service*, 115 N.C. App. 641, 649, 446 S.E.2d 117, 122, *disc. review denied*, 337 N.C. 689, 448 S.E.2d 516 (1994) (quoting *Motor Lines v. General Motors Corp.*, 258 N.C. 323, 325, 128 S.E.2d 413, 415 (1962)). Otherwise put, a cause of action pursuant to § 75-16 accrues when the violation occurs. *See United States v. Ward*, 618 F.Supp. 884, 902 (E.D.N.C. 1985). As stated earlier, the latest actionable wrong attendant to this claim occurred on 15 March 1990, when plaintiff executed the note and deed of trust.

Thus, under N.C. Gen. Stat. § 75-16.2 (1994), plaintiff would have had to initiate this action within four years from 15 March 1990 to escape the perimeter of the statute of limitation. Plaintiff's complaint was not filed until 13 July 1994. Suffice it to say that plaintiff's unfair and deceptive practice claim is time barred by § 75-16.2.

As plaintiff's claims do not survive defendant's affirmative statutes of limitation defenses, the trial court's grant of summary judgment is affirmed. *Clark v. Brown*, 99 N.C. App. at 260, 393 S.E.2d at 136-37.

Affirmed.

Judges JOHNSON and JOHN concur.