IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-482

Filed 5 March 2025

Durham County, No. 22CVS2723

PARADIGM PARK HOLDINGS, LLC, Plaintiff,

v.

GLOBAL GROWTH HOLDINGS, INC., a Delaware Corporation, f/k/a ACADEMY ASSOCIATION, INC., Defendant.

Appeal by Defendant from judgments entered 1 February 2024 and 13 March 2024 by Judge Brian C. Wilks in Durham County Superior Court. Heard in the Court of Appeals 28 January 2025.

> *Longleaf Law Partners, by Benjamin L. Worley, for the plaintiff-appellee.*
>
> *Fox Rothschild LLP, by Matthew Nis Leerberg, and Condon Tobin Sladek Thornton Nerenberg PLLC, by Aaron Z. Tobin and Jared T.S. Pace, Pro Hac Vice, for the defendant-appellant.*

WOOD, Judge.

Paradigm Park Holdings, LLC ("Paradigm Park") initiated this action against Global Growth Holdings, Inc. ("Global Growth"), alleging Global Growth did not pay rent according to the parties' lease agreement. Paradigm Park sued for breach of contract, and alternatively, *quantum meruit*. Global Growth asserted defenses and filed a counterclaim for unjust enrichment. Following cross summary judgment motions, the trial court granted Paradigm Park's motion, dismissed Global Growth's

counterclaim, and awarded attorneys' fees to Paradigm Park. Global Growth appeals, arguing the trial court erred by granting summary judgment in favor of Paradigm Park and by dismissing its counterclaim for unjust enrichment. For the reasons discussed below, we reverse the trial court's judgment.

## I.   Factual and Procedural Background

On 9 February 2018, Paradigm Park was formed as a North Carolina limited liability company. Global Growth, previously Academy Association, Inc., is a Delaware corporation with a principal place of business in Durham County, North Carolina. Paradigm Park and Global Growth were affiliated entities, both owned and controlled by Greg Lindberg. Mr. Lindberg was the sole manager of Paradigm Park and was the president of Global Growth.

Paradigm Park was established as a single-purpose entity to own a property comprising two office buildings in Durham County (the "Property"). It existed solely to hold the Property, and the revenue generated from its management. To purchase the Property, Paradigm Park borrowed funds from Fifth Third Bank (the "Bank") and thereafter provided the Bank with a promissory note and Deed of Trust on the Property. At the time of purchase, part of the Property was subject to two leases with existing tenants. As a condition of financing, the Bank required Paradigm Park to secure an additional tenant. Subsequently, Mr. Lindberg  caused Global Growth to enter into a lease agreement for the remaining portion of the Property.

On 11 May 2018, Paradigm Park executed a "Commercial Lease Agreement" (the "Lease") with Global Growth for a five-year term from May 2018 to May 2023. The Lease consisted, *inter alia*, of the following terms: Paradigm Park, as the landlord, would lease 141,441 square feet of the Property to Global Growth; Global Growth, as the tenant, would pay $3,182,422.50 per year, or $265,201.88 per month, in rent to Paradigm Park. Mr. Lindberg signed the Commercial Lease Agreement on behalf of both entities.

Under the terms of the Lease, Paradigm Park was responsible for "capital repairs and replacements" on the Property, including repairs to the roof, foundation, structural supports, and exterior walls. Likewise, Paradigm Park was required to maintain the heating, ventilation and air condition systems, and as necessary, pay for repairs to the units. Global Growth was required, at its expense, to maintain the condition of the Property, including general landscaping. Paradigm Park was also responsible for the payment of taxes on the Property, as well as payment for commercial, general liability, and other necessary insurance. Global Growth was required to reimburse Paradigm Park for the respective insurance payments within fifteen days of receipt of notice of amounts due. The Lease did not specify which entity was responsible for utilities, janitorial services, trash services, the sprinkler system, pest control, or other miscellaneous items for the Property.

During the term of the Lease, Global Growth did not make any rent payments to Paradigm Park. Instead, in lieu of rent payments, Global Growth paid Paradigm

Park's monthly mortgage payments to the Bank from approximately May 2018 to April 2022. Additionally, Global Growth paid the Property's operating and maintenance expenses for Paradigm Park, notwithstanding the terms of the Lease agreement. This arrangement continued for several years.

In September 2020, new management took over control of Paradigm Park and the parties to the Lease became unaffiliated entities.[1] Upon reviewing the Lease and associated records, the new management discovered Global Growth had not been making rent payments. On 24 January 2022, Paradigm Park sent Global Growth a notice of default because of its failure to make rent payments according to the terms of the Lease. The notice acknowledged Global Growth's monthly mortgage payments in lieu of rent, but alleged Global Growth owed an outstanding balance of $9,239,563.89 because the monthly mortgage payment was less than the monthly rent payment. After receiving the notice of default, Global Growth did not make any payments. On 16 February 2022, Paradigm Park notified Global Growth of the termination of the Lease and its intent to take possession of the Property. On 25

---

[1] On 30 June 2017, PB Life and Annuity Co., Ltd. ("PBLA") created the "PBLA ULICO 2017 TRUST" (the "Trust"), pursuant to a "Reinsurance Trust Agreement" ("RTA"), between PBLA, as the grantor, Universal Life Insurance Company ("ULICO"), as the sole beneficiary, and TMI Trust Company ("TMI") as the trustee. According to the RTA, PBLA was required to maintain a threshold amount of funds in the Trust in order for ULICO to make payments to its policyholders. At that time, PBLA was owned by Mr. Lindberg. In December 2018, the assets in the Trust had taken a loss. To recover, Global Growth conveyed one hundred percent of the common ownership and fifty percent of the preferred equity in Paradigm Park to PBLA. PBLA then transferred its ownership interests in Paradigm Park to the Trust. PBLA subsequently entered liquidation proceedings in Bermuda. The appointed provisional liquidators for PBLA thereafter assumed control of the proceedings and the authority to act on behalf of Paradigm Park.

March 2022, Durham County Magistrate's Court granted Paradigm Park's motion for summary ejectment, and Global Growth was evicted on 18 April 2022.

On 18 May 2022, Paradigm Park sent another demand for payment, but Global Growth did not respond. On 15 June 2022, Paradigm Park filed the current action, asserting claims for breach of contract, and alternatively, *quantum meruit*. In its breach of contract claim, Paradigm Park alleged Global Growth breached the Lease by failing to pay rent payments totaling $14,308,971.80. In its alternative claim of *quantum meruit*, Paradigm Park alleged Global Growth owed $8,209,325.69 for the value of the services it provided while Global Growth occupied the Property during the period of May 2018 through April 2022. Additionally, Paradigm Park asserted claims for attorney's fees pursuant to the terms of the Lease. On 29 August 2022, Global Growth filed an answer asserting numerous defenses and a counterclaim for unjust enrichment. In its counterclaim, Global Growth asserted it provided benefits valued at $8,200,000.00 to Paradigm Park in the form of mortgage payments, property management costs, and other maintenance expenses for the upkeep of the Property during the time at issue. Accordingly, Global Growth sought to recover from Paradigm Park the full amount of these benefits.

On 8 September 2023, Paradigm Park moved for partial summary judgment on its breach of contract claim and on Global Growth's counterclaim for unjust enrichment. Global Growth filed a cross-motion for summary judgment. By order entered 10 January 2024, the trial court granted Paradigm Park's partial motion for

summary judgment for breach of contract and denied Global Growth's motion for summary judgment. The trial court found Global Growth breached the Lease, there were no material issues of fact concerning Global Growth's liability pursuant to the breach of contract claim, and Paradigm Park was entitled to judgment as a matter of law. The trial court dismissed Global Growth's counterclaim for unjust enrichment.

Subsequently, the parties entered into a consent stipulation regarding damages resulting from Global Growth's breach of contract, with Global Growth reserving its right to appeal from the trial court's judgment. The parties stipulated to damages in the amount of $8,500,000.00. Accordingly, on 1 February 2024, the trial court entered summary judgment awarding Paradigm Park $8,500,000.00, pursuant to the parties' stipulation regarding damages resulting from the breach of contract claim. The trial court further allowed Paradigm Park to notice a motion for consideration of attorneys' fees.

The parties stipulated to reasonable attorneys' fees in the amount of $120,000.00 for Paradigm Park. Thereafter, the trial court entered an amended judgment on 13 March 2024, consistent with the stipulation on attorneys' fees. The amended judgment awarded Paradigm Park $4,860.85 in costs; $120,000.00 in attorney's fees; $1,425,205.48 in pre-judgment interest, accruing at the rate of $1,863.01 per day until judgment is entered; and post-judgment interest at the rate of eight percent per annum from the date of judgment until paid in full.

Global Growth filed written notice of appeal on 1 March 2024 from the trial court's judgment entered on 1 February 2024. On 11 April 2024, Global Growth filed a notice of appeal on the trial court's amended judgment entered on 13 March 2024.

## II.    Analysis

On appeal, Global Growth challenges the trial court's granting of partial summary judgment in favor of Paradigm Park and dismissal of its counterclaim for unjust enrichment. Specifically, Global Growth argues: (1) summary judgment on Paradigm Park's breach of contract claim was improper because there are material issues of fact as to its affirmative defense of waiver; (2) the trial court erroneously dismissed its counterclaim for unjust enrichment; and (3) the trial court lacked jurisdiction when it entered the amended judgment because it was entered after Global Growth filed notice of appeal to this Court.

"Summary judgment is appropriate if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *Forbis v. Neal*, 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007) (citation omitted). A party satisfies this burden by: "(1) proving that an essential element of the plaintiff's case is nonexistent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense which would bar the claim." *James v. Clark*, 118 N.C. App. 178, 180-81, 454

S.E.2d 826, 828 (1995) (citation omitted).

A genuine issue of material fact exists when "the facts alleged are such as to constitute a legal defense or are of such nature as to affect the result of the action, or if the resolution of the issue is so essential that the party against whom it is resolved may not prevail." *Mace v. Utley*, 275 N.C. App. 93, 98-99, 853 S.E.2d 210, 214 (2020) (citations omitted). Stated differently, it is "one which can be maintained by substantial evidence." *Id.* The trial court is not permitted to resolve issues of fact, and the evidence must be viewed in the light most favorable to the nonmoving party. *Neal*, 361 N.C. App. at 524, 649 S.E.2d at 385.

"Our standard of review of an appeal from summary judgment is *de novo;* such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *McLennan v. Josey*, 234 N.C. App. 45, 47, 758 S.E.2d 888, 890 (2014) (citations omitted). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Smith v. Cnty. of Durham*, 214 N.C. App. 423, 430, 714 S.E.2d 849, 854 (2011) (cleaned up).

## A. Waiver

Global Growth first argues the trial court erred by granting Paradigm Park's motion for summary judgment when issues of material fact on whether Paradigm Park waived its right to collect rent from Global Growth existed. Global Growth asserts Paradigm Park waived this right by its conduct of accepting mortgage

payments, and other payments and services in lieu of formal rent for approximately four years.

Waiver is defined as "an intentional relinquishment or abandonment of a known right or privilege." *Bombardier Cap., Inc. v. Lake Hickory Watercraft, Inc.*, 178 N.C. App. 535, 540, 632 S.E.2d 192, 196 (2006) (cleaned up). This Court has defined the elements of waiver as: "(1) the existence, at the time of the alleged waiver, of a right, advantage or benefit; (2) the knowledge, actual or constructive, of the existence thereof; and (3) an intention to relinquish such right, advantage or benefit." *Demeritt v. Springsteed*, 204 N.C. App. 325, 328-29, 693 S.E.2d 719, 721 (2010) (citation omitted). Further, "[a] waiver may be express or implied." *Medearis v. Trustees of Meyers Park Baptist Church*, 148 N.C. App. 1, 11, 558 S.E.2d 199, 206 (2001) (citation omitted). It is undisputed that Paradigm Park did not expressly waive the right to collect rent from Global Growth; rather, the issue here is whether there was an implied waiver by conduct.

Whether a waiver is express or implied, "[t]here must always be an *intention* to relinquish a right, advantage, or benefit." *In re Pedestrian Walkway Failure*, 173 N.C. App. 254, 265, 618 S.E.2d 796, 804 (2005). The intention to waive may be implied "when a person dispenses with a right 'by conduct which naturally and justly leads the other party to believe that he has so dispensed with the right.' " *Medearis*, at 12, 558 S.E.2d at 206-07 (citation omitted). The elements for implied waiver are:

> (1) The waiving party is the innocent, or non-breaching

party, and

(2) The breach does not involve total repudiation of the contract so that the nonbreaching party continues to receive some of the bargained-for consideration. . . .

(3) The innocent party is aware of the breach, and

(4) The innocent party intentionally waives his right to excuse or repudiate his own performance by continuing to perform or accept the partial performance of the breaching party.

*Wheeler v. Wheeler*, 299 N.C. 633, 639, 263 S.E.2d 763, 766-67 (1980).

Global Growth and Paradigm Park agree that the first three elements of implied waiver are met. Therefore, we turn our attention to whether the fourth element is met, namely did Paradigm Park intentionally waive its right to collect rent payments from Global Growth under the Lease agreement when it accepted Global Growth's payments of mortgage, maintenance and operational expenses in lieu of rent for approximately four years?

In support of its argument, Global Growth cites a recent decision of this Court, *Town of Forest City v. Florence Redevelopment Partners, LLC*, 292 N.C. App. 86, 896 S.E.2d 653 (2024). There, the Town of Forest City ("Town") contracted with Florence Redevelopment Partners ("Florence") to purchase the Florence Mill building, a historic property located in the Town. *Id.* at 88, 896 S.E.2d at 655. The contract contained an "inspection period" provision whereby Florence was required to deliver to the Town a "Notice of Suitability" prior to the expiration of the inspection period.

The Notice of Suitability served as notice to the Town that Florence was satisfied with the results of the inspections of the building. If Florence failed to deliver the Notice of Suitability to the Town prior to the expiration of the inspection period, the contract automatically terminated. Subsequently, Florence delivered its Notice of Suitability twenty-eight days after the "inspection period" contract deadline. Despite Florence's late notice, the Town continued to fulfil its obligations under the contract until more than a year later, it sent Florence a notice of termination.

The trial court granted summary judgment in favor of the Town, reasoning that the contract had automatically terminated upon Florence's failure to deliver timely Notice of Suitability. *Id.* at 91, 896 SE.2d at 656-57. Florence appealed, and this Court contemplated whether the Town waived the Notice of Suitability deadline when it continued to perform under the contract. This Court first noted, "[i]t has long been the law in North Carolina that '[t]he provisions of a written contract may be modified *or waived* . . . by conduct which naturally and justly leads the other party to believe the provisions of the contract are modified or waived.' " *Id.* at 95, 896 S.E.2d at 658. The undisputed facts in *Town of Forest City* showed that the Town accepted Florence's notice twenty-eight days after the deadline passed; after acceptance, the Town "continued to perform and accept Florence's performance *for more than a year after the deadline*[;]" the parties maintained contact with one another and negotiated matters concerning the building; and more than one year after the Town accepted the untimely notice, the Town sent the notice of termination to Florence. This Court

concluded, "The undisputed facts establish conduct that naturally would lead Florence to believe that the Town had dispensed with its right to insist that the Notice of Suitability be delivered by [the expiration of the inspection period]. Accordingly, the trial court erred by granting the Town summary judgment. *Id.* at 96, 896 S.E.2d at 659.

Global Growth argues the present case is analogous to *Town of Forest City*. We agree. First, Paradigm Park did not seek to collect rent from Global Growth per the Lease agreement from May 2018 to January 2022, when it sent the notice of default. During this time, Global Growth made approximately fifty mortgage payments on behalf of Paradigm Park. Second, Paradigm Park was required to keep the building in "good order" and make "capital" repairs; however, because Paradigm Park did not have employees, Global Growth's employees maintained the building and paid for its upkeep. Global Growth paid for the Property's sprinkler system; it paid for pest control; it spent a substantial amount of money repairing the Property's sewer line; and it installed a security system on the Property. Likewise, Global Growth paid for utilities and service contracts, and other expenses necessary to maintain the Property, even though it was not obligatory.

Lastly, from 2018 to 2022, Paradigm Park appeared to accept this arrangement, as it continuously accepted the benefits provided by Global Growth and never demanded what was agreed upon in the Lease. As in *Town of Forest City*, the undisputed facts establish conduct that naturally would lead Global Growth to

believe Paradigm Park had dispensed with its right to collect monthly rent payments. Paradigm Park accepted Global Growth's payments of the mortgage, maintenance and operational expenses, and overall upkeep of the Property in lieu of rental payments for *several years.*

On the other hand, Paradigm Park contends that the record contains no evidence of an intent to waive the right to collect rent. It points to several email exchanges between Mr. Lindberg and other executives, where certain expenses and payments were discussed. Additionally, Paradigm Park directs this Court to its own cash flow statement, which reflected an intercompany receivable in the amount of $265,201.88 per month, the rental payment under the Lease. None of this evidence addresses Paradigm Park's *conduct* of allowing Global Growth to continue making monthly payments on the mortgage, and performing costly maintenance on the Property, for years in lieu of rent.

Contrary to Paradigm Park's position, waiver is "is a question of intent, which may be inferred from a party's conduct." *Harris & Harris Const. Co. v. Crain & Denbo, Inc.,* 256 N.C. 110, 119, 123 S.E.2d 590, 596 (1962). Here, the evidence tends to show that Paradigm Park, by its conduct, led Global Growth to believe it had dispensed with its right to collect rent. Specifically, Paradigm Park's conduct led Global Growth to believe that payments on the mortgage and payments to upkeep the Property were satisfactory in lieu of monthly rent. *See Medearis*, 148 N.C. App. at 12, 558 S.E.2d at 206-07 (the intention to relinquish a right is implied "when a person dispenses with

a right 'by conduct which naturally and justly leads the other party to believe that he has so dispensed with the right.' "). Accordingly, the trial court erred in granting summary judgment in favor of Paradigm Park on its breach of contract claim.

## B. Unjust Enrichment

Next, Global Growth argues the trial court erred when it dismissed its counterclaim for unjust enrichment, as it made payments and performed services beyond those required under the Lease.

"In order to recover on a claim of unjust enrichment, a party must prove that it conferred a benefit on another party, that the other party consciously accepted the benefit, and that the benefit was not conferred gratuitously or by an interference in the affairs of the other party." *Se. Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 330, 572 S.E.2d 200, 206 (2002) (citation omitted). "A claim of this type is neither in tort nor contract but is described as a claim in quasi contract or a contract implied in law." *Hinson v. United Fin. Servs., Inc.*, 123 N.C. App. 469, 473, 473 S.E.2d 382, 385 (1996) (citation omitted). This Court has consistently held, "if there is a contract between the parties, the contract governs the claim, and the law will not imply a contract." *Delta Env't Consultants of N. Carolina, Inc. v. Wysong & Miles Co.*, 132 N.C. App. 160, 165, 510 S.E.2d 690, 694 (1999) (cleaned up). Stated differently, "[o]nly in the absence of an express agreement of the parties will courts impose a quasi-contract or a contract implied in law in order to prevent an unjust enrichment." *Whitfield v. Gilchrist*, 348 N.C. 39, 42, 497 S.E.2d 412, 415 (1998) (citation omitted). "Therefore,

the focus in the *quantum meruit* context is on whether there is an express contract on the subject matter at issue and not on whether there was a contract between the parties." *Cabrera v. Harvest St. Holdings, Inc.*, 284 N.C. App. 227, 234, 876 S.E.2d 593, 599 (2022) (cleaned up).

Global Growth argues it conferred three extra-contractual benefits on Paradigm Park: (1) the payment of the mortgage on the Property; (2) the payment of maintenance, utilities, services, and equipment on the Property; and (3) Global Growth's use of its employees to manage the Property since Paradigm Park had none.

As an initial matter, we observe that the Lease constitutes an express contract between Global Growth and Paradigm Park. It contains provisions for the payment of the services and expenses from which Global Growth seeks to recover. For example, the Lease included the following sections: rental payments and the Lease term; utility bills and service contracts; taxes and insurance; repairs by the landlord and tenant; alterations to the Property; and remedies. *See Gregory v. Pearson*, 224 N.C. App. 580, 586, 736 S.E.2d 577, 581 (2012) ("It is a well-established principle that an express contract precludes an implied contract with reference to the same matter.") (citation omitted).

However, the benefits for which Global Growth's complaint seeks compensation are extra-contractual. The Lease did not obligate Global Growth to make mortgage payments; rather, it required Global Growth to pay $265,201.88 in monthly rent. The Lease did not require Global Growth to pay for utilities and certain

services, yet Global Growth paid for these expenses. Likewise, Paradigm Park was responsible for major repairs and maintenance to the Property but, instead, Global Growth paid for these expenses and utilized its employees to manage and maintain the Property.

We turn now to address the purpose of the equitable remedy of unjust enrichment. "The hallmark rule of equity is that it will not apply 'in any case where the party seeking it has a full and complete remedy at law.' " *Hinson*, 123 N.C. App. at 473, 473 S.E.2d at 385 (citation omitted). "Unjust enrichment has been described as: the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor." *Watson Elec. Const. Co. v. Summit Companies, LLC*, 160 N.C. App. 647, 652, 587 S.E.2d 87, 92 (2003) (citation omitted). The doctrine is "based upon the equitable principle that a person should not be permitted to enrich himself unjustly at the expense of another." *Hinson*, 123 N.C. App. at 473, 473 S.E.2d at 385 (citation omitted). Likewise, the remedy is proper "in circumstances such that it would be 'unfair' for the recipient to retain the benefit of the claimant's services." *Watson Elec. Const. Co.*, 160 N.C. App. at 652, 587 S.E.2d at 92 (citation omitted).

It would be inequitable to allow Paradigm Park to retain Global Growth's payments and services, allegedly in the amount of $8,200,000.00, without compensating Global Growth. The mortgage payments, property management costs, and other maintenance expenses were not Global Growth's obligations under the

terms of the Lease. Paradigm Park accepted these benefits at the expense of Global Growth without objection for nearly four years. Thus, if Global Growth is found to have breached the Lease Agreement, then it must have its day in court to put forth evidence to support its counterclaim for unjust enrichment. This holding is consistent with the purpose of the doctrine of unjust enrichment. Accordingly, the trial court erred by dismissing Global Growth's counterclaim for unjust enrichment.

### III.    Conclusion

For the foregoing reasons, we conclude the trial court erred by granting summary judgment on Paradigm Park's breach of contract claim and erred by dismissing Global Growth's counterclaim for unjust enrichment. We reverse the trial court's summary judgment order and vacate the resulting final judgment entered 1 February 2024 and remand to the trial court for further proceedings not inconsistent with this opinion. It is so ordered.

REVERSED, VACATED, AND REMANDED.

Judges COLLINS and GRIFFIN concur.