Blue Ridge Pediatric & Adolescent Medicine, Inc. v. First Colony Healthcare, LLC, 2012 NCBC 51.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| WATAUGA COUNTY | 11 CVS 127 |

BLUE RIDGE PEDIATRIC & ADOLESCENT MEDICINE, INC., a North Carolina professional corporation; A TO Z ENTERPRISES, LLC, a North Carolina limited liability company; GREGORY L. ADAMS, an individual; CLINTON B. ZIMMERMAN, JR., an individual; and WESLEY SCOTT ST. CLAIR, an individual,

        Plaintiffs,

v.

FIRST COLONY HEALTHCARE, LLC, a North Carolina limited liability company; FCHC – GREENWAY COMMONS LAND, LLC, a North Carolina limited liability company; FCHC – GREENWAY COMMONS INVESTORS, LLC, a North Carolina limited liability company; FCHC – GREENWAY COMMONS, LLC, a North Carolina limited liability company; FC HEALTHCARE, INC., a North Carolina corporation; FIRST COLONY HEALTHCARE HOLDINGS II, LLC, a North Carolina limited liability company; RANDY T. RUSSELL, an individual; DENNIS R. NORVET, an individual; BOBBY D. HINSON, an individual; FIRST COLONY HEALTHCARE II, LLC, a North Carolina limited liability company; FC HEALTHCARE II, INC., a North Carolina corporation; COLONY DEVELOPMENT PARTNERS, LLC, a North Carolina limited liability company; and COLONY MANAGEMENT, INC., a North Carolina corporation,

        Defendants.

**ORDER & OPINION**

*Harris, Creech, Ward and Blackerby, P.A., by W. Gregory Merritt, Thomas M. Ward, Jay C. Salsman, and Luke A. Dalton for Plaintiffs.*

*Brown Law, LLP, by Gregory W. Brown and Justin M. Osborn for Defendants.*

Murphy, Judge.

{1}    **THIS MATTER** is before the Court on Defendants' (First Colony Healthcare, LLC and several affiliated companies (collectively "First Colony"), Randy T. Russell ("Russell"), Dennis R. Norvet ("Norvet"), and Bobby D. Hinson ("Hinson") (collectively "Individual Defendants")) Motion to Dismiss (the "Motion") pursuant to Rules 9(b) and 12(b)(6) of the North Carolina Rules of Civil Procedure.

{2}    Having considered Plaintiffs' Amended Complaint, the parties' briefs and submissions, and the contentions of counsel made at the October 31, 2011, hearing on Movants' Motion to Dismiss, the Court **GRANTS** in part and **DENIES** in part Defendants' Motion to Dismiss.

I.

PROCEDURAL HISTORY

{3}    On March 8, 2011, Plaintiffs Blue Ridge Pediatric and Adolescent Medicine, Inc. ("Blue Ridge"); A to Z Enterprises, LLC ("A to Z"); Gregory L. Adams, Clinton B. Zimmerman, Jr., John R. Lonas, and Wesley Scott St. Clair (collectively the "Doctors") brought this action against Defendants. (Compl. 39.)

{4}    Plaintiffs filed a Verified Amended Complaint on May 27, 2011. (V. Am. Compl. 41.)

{5}    Defendants filed this Motion on July 8, 2011. (Defs.' Mot. Dismiss 4.)

{6}    The Motion was fully briefed on August 29, 2011, and the Court held a hearing on October 31, 2011. (Pls.' Mem. Law Opp. Defs.' Mot. Dismiss 50.)

{7}    By order dated May 14, 2012, the Court stayed all case management deadlines, including discovery until August 13, 2012, and directed the parties to engage in mediation before August 13, 2012. Blue Ridge Pediatric & Adolescent Medicine, Inc. v. First Colony Healthcare, LLC, No. 11 CVS 127 (N.C. Super. Ct. May 14, 2012) (order staying discovery).

## II.

## FACTUAL BACKGROUND

{8}     Defendants move the Court to dismiss Plaintiffs' complaint pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure.  While Rule 12(b)(6) motions ordinarily do not require findings of fact because they do "not present the merits, but only [determine] whether the merits may be reached," for purposes of the Court's Rule 12(b)(6) analysis, this Order and Opinion recites those facts from the Complaint that are relevant to the Court's legal determinations.  *Concrete Serv. Corp. v. Investors Group, Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986).

{9}     Plaintiff Blue Ridge, a North Carolina professional corporation, provides pediatric and adolescent medical services.  The Blue Ridge doctors are all shareholders and directors of Blue Ridge, as well as members and managers of A to Z.  (V. Am. Compl. ¶¶ 2–3.)

{10}   Defendants are in the business of real estate development and property management.  Plaintiffs brought this action against Defendants seeking to recover damages arising out of a real estate development and lease agreement between the parties.  (*See generally* V. Am. Compl.)

{11}   Initially, Defendants First Colony Healthcare, LLC; First Colony Healthcare II, LLC; First Colony Healthcare Holdings II, LLC; FC Healthcare, Inc.; FC Healthcare II, Inc.; FCHC – Greenway Commons, LLC ("GC"); FCHC – Greenway Commons Investors, LLC ("GCI"); and FCHC – Greenway Commons Land, LLC ("GCL") (collectively "First Colony Subsidiaries") were affiliates of First Colony Corporation.  (V. Am. Compl. ¶ 10.)  However, First Colony Corporation filed for bankruptcy, is currently under the protection of the Bankruptcy Court, and is not named in this lawsuit.  (V. Am. Compl. ¶ 61.)

{12}   Defendants Colony Development Partners, LLC ("CDP") and Colony Management, Inc. ("CM") are affiliated companies formed after the execution of the agreements at issue in this litigation.  (V. Am. Compl. ¶¶ 11, 55.)  In the summer of

2008, CDP took over for First Colony Corporation, assuming the assets and duties of a number of its affiliates. (V. Am. Compl. ¶¶ 55, 191.)

{13}  In early 2006, Plaintiffs decided to relocate their business. (V. Am. Compl. ¶ 14.)  Unable to locate an existing building to fit their needs, Plaintiffs began the search for 1.5 to 2 acres of land located close to the hospital upon which to construct a new building. (V. Am. Compl. ¶ 15.)

{14}  One parcel (the "Templeton Property," owned by Templeton Properties ("Templeton")) appeared to be particularly suitable, but was larger than Plaintiffs needed. (V. Am. Compl. ¶ 16.)  When Templeton declined to sell less than the whole parcel to Plaintiffs, Joe Joseph, a representative of one of the construction companies considered for the project, referred Plaintiffs to First Colony to discuss the potential development of the property. (V. Am. Compl. ¶¶ 16–17.)[1]  First Colony "held itself out as a very financially strong and very fiscally responsible expert in medical park development." (V. Am. Compl. ¶ 110.)  Plaintiffs were then introduced to Norvet, a principal of First Colony.  Norvet made a sales presentation to Plaintiffs and provided promotional materials detailing First Colony's construction and development expertise. (V. Am. Compl. ¶¶ 18–20.)  After the presentation, "Russell was introduced to Plaintiffs as another principal of First Colony who would be Plaintiffs' primary contact for the proposed project." (V. Am. Compl. ¶ 22.)

{15}  First Colony proposed a partnership arrangement with Plaintiffs whereby First Colony would provide the capital and assume all risks incident to developing the Templeton Property into a medical office park and Blue Ridge would lease office space from First Colony for a period of ten years. (V. Am. Compl. ¶ 20.)  As part of the agreement, Blue Ridge would, through ownership in A to Z, become members in the companies owning the office park, allowing Blue Ridge to share in the profits

---

[1] In the Amended Complaint, Plaintiffs assign the term "First Colony" to "First Colony Corporation" (V. Am. Compl. ¶ 5), but later state, "collectively, for administrative ease First Colony Corporation and/or its Affiliates may be referred to herein as 'First Colony.'" (V. Am. Compl. ¶ 10.) This ambiguity has no bearing on the Court's resolution of these Motions.

from the office building and from any subsequent sale of the property.  (V. Am. Compl. ¶ 21.)

{16}  Induced by First Colony's assurances that Plaintiffs would be equity participants in the deal and that Plaintiffs would have access to all of First Colony's pertinent financial records for the deal, Plaintiffs indicated a tentative decision to move forward with the proposed partnership.  (V. Am. Compl. ¶¶ 24, 27.)  On October 26, 2006, anticipating the deal with First Colony, Plaintiffs signed a contract to purchase the Templeton Property for less than fair market value.  (V. Am. Compl. ¶ 25.)

{17}  In response, Defendant Hinson prepared the documents needed to memorialize the agreement of the parties, including a lease and an operating agreement.  (V. Am. Compl. ¶ 28.)  In early January 2007, Plaintiffs forwarded the documents to their counsel, Thomas M. Ward, for his review.  (V. Am. Compl. ¶ 29.)

{18}  Ward raised concerns about the proposed deal that caused Plaintiffs to reconsider their involvement.  At Plaintiffs' request, Ward wrote a letter to Hinson detailing those aspects of the proposal he viewed as unfavorable to Plaintiffs.  (V. Am. Compl. ¶¶ 33–34.)  Thereafter, Russell personally visited Plaintiffs in Boone, North Carolina.  Insisting that Ward did not understand the transaction, Russell assured Plaintiffs that the parties' relationship was a "special relationship of trust and confidence," and that First Colony would always have Plaintiffs' "best interest at heart."  (V. Am. Compl. ¶ 35.)  Russell also pointed out that Plaintiffs would be recouping a substantial part of the lease payments in profits from the deal.  (V. Am. Compl. ¶ 35.)  In February 2007, Plaintiffs decided to go forward with the deal as proposed.  (V. Am. Compl. ¶ 36.)

{19}  On February 22, 2007, Russell emailed the transaction documents prepared by Hinson to Plaintiffs and stated that no material changes had been made to them.  (V. Am. Compl. ¶¶ 41–42.)  Russell reiterated that Hinson would act as the lawyer for the partnership and had prepared the documents with Plaintiffs' interests in mind.  (V. Am. Compl. ¶ 42.)

{20} In March 2007, the parties completed the agreement. As part of the deal, on March 29, 2007, Plaintiffs conveyed the Templeton Property to GCL. (V. Am. Compl.¶ 47.) Shortly before, on March 7, 2007, Blue Ridge entered into a ten-year lease agreement (the "Lease") on the yet-to-be-constructed office building at a rate in excess of fair market value that the Doctors individually guaranteed. (V. Am. Compl. ¶ 21, 46.) On the same day, A to Z and GCL executed an operating agreement (the "Operating Agreement"). (V. Am. Compl. Ex. Q.) Plaintiffs allege that, as an inducement to enter the Lease, First Colony promised that profits arising out of the Operating Agreement would be distributed quarterly to A to Z. (V. Am. Compl. ¶ 57.)

{21} Plaintiffs moved into the completed office on or around March 21, 2008. (V. Am. Compl. ¶ 56.) To date, Blue Ridge has paid rents in excess of $971,000, but A to Z has received no distributions of profits pursuant to the Operating Agreement. (V. Am. Compl. ¶¶ 56–57.)

{22} In October 2008, and March 2009, Plaintiffs asked Defendants about the payments required under the profit-sharing provisions of the Operating Agreement. (V. Am. Compl. ¶¶ 58–60.) Plaintiffs allege that Russell's long-delayed responses failed to fully explain the financial status of the project. (V. Am. Compl. ¶¶ 58–60.) Also in October 2008, Plaintiffs sought financial information about the project, as promised by First Colony. In response, Plaintiffs received some financial records from Russell. (V. Am. Compl. ¶ 24, 59.) When they compared the records from Russell to copies of the Lease and Operating Agreements provided by First Colony at the signing of the Lease, Plaintiffs noticed what they allege were material changes to certain contractual terms of the Operating Agreement. (V. Am. Compl. ¶ 71.) Plaintiffs also discovered that they were never provided with fully executed copies of the agreements. (V. Am. Compl. ¶ 68.) Plaintiffs later learned that all of the Templeton Property had been sold without Plaintiffs' knowledge, and Plaintiffs had received nothing from the sale. (V. Am. Compl. ¶ 66.)

{23} Plaintiffs' allegations of wrongdoing by the Defendants can be generally summarized as follows: (1) Defendants concealed or misrepresented facts

surrounding the financial stability of First Colony; (2) Defendants altered the Operating Agreement and other documents without Plaintiffs' knowledge or consent; (3) Defendants sold the property without A to Z's consent and without sharing any of the profits of the sale; and (4) Defendants misrepresented material facts and made unauthorized changes to the agreements which resulted in additional costs and fees for Plaintiffs. (*See generally* V. Am. Compl. ¶¶ 12–110.)

III.

LEGAL STANDARD

{24} On a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, the question for the court is "'whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory.'" *Block v. County of Person*, 141 N.C. App. 273, 277, 540 S.E.2d 415, 419 (2000) (quoting *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987)).

{25} "The complaint must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." *Id.* at 277–78, 540 S.E.2d at 419. When the complaint fails to allege the substantive elements of some legally cognizable claim, or where it alleges facts that defeat any claim, the complaint should be dismissed under Rule 12(b)(6). *See Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 345–46, 511 S.E.2d 309, 312 (1999).

{26} However, unlike factual allegations, bare legal conclusions are "not entitled to a presumption of truth" on a motion to dismiss. *Miller v. Rose*, 138 N.C. App. 582, 592, 532 S.E.2d 228, 235 (2000).

{27} In applying the standard applicable to Rule 12(b)(6) motions, the Court is mindful that averments of fraud, denial of performance or condition precedent of a contract, and demands for punitive damages must be pled specifically and with particularity. N.C. R. Civ. P. 9(b), (c), (k).

IV.

ANALYSIS

A.

INTRODUCTION

{28}  Defendants' arguments are generally twofold.  First, Defendants argue that certain Plaintiffs lack standing to bring claims against Defendants.  Second, Defendants argue that each of Plaintiffs' claims in the Verified Amended Complaint, except for claim thirteen (wrongful conversion), should be dismissed pursuant to Rules 12(b)(6) and 9(b) of the North Carolina Rules of Civil Procedure.

B.

CLAIMS

1.

DOCTORS' STANDING

{29}  To properly assert a claim against another party, a plaintiff must have standing.  Therefore, "[a] lack of standing may be challenged by a 12(b)(6) motion to dismiss." *See, e.g., Energy Investors Fund v. Metric Constructors, Inc.*, 351 N.C. 331, 337, 525 S.E.2d 441, 445 (2000).

{30}  "[G]uarantors of a corporation's debts ordinarily may not pursue individual actions to recover damages for injuries to the corporation." *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 661, 488 S.E.2d 215, 221 (1997).  However, a guarantor may establish standing by alleging "either (1) that the wrongdoer owed him a *special duty*, or (2) that the injury suffered by the guarantor is personal to him and distinct from the injury sustained by the corporation itself." *Id.* (emphasis added).  "[T]he existence of a special duty may be established by facts showing that defendants owed a duty to plaintiffs that was personal to plaintiffs as guarantors and was separate and distinct from the duty defendants owed the corporation." *Id.*

{31}  In *Barger*, the court found a special duty arose between the parties because (1) the plaintiffs "specifically informed" defendants that the loan would be

personally guaranteed, and (2) defendants assured the plaintiffs of the corporation's financial status to induce the guarantees. *Id.* at 661, 488 S.E.2d at 221.

{32} Here, the Doctors agreed to personally guarantee the Lease after Defendants allegedly misrepresented themselves as "very financially strong and very fiscally responsible." (V. Am. Compl. ¶¶ 21, 110.) As in *Barger*, the facts alleged in Plaintiff's complaint sufficiently indicate that (1) Defendants were aware the Doctors were personally guaranteeing the Lease, and (2) the representations made by Defendants about their financial status "induced" the Doctors' guarantees. These allegations, taken as true, would create a special duty personal to the Doctors, adequate to confer standing upon them.

{33} Accordingly, the Court concludes that Plaintiffs Adams, Zimmerman, and St. Clair have standing to bring their individual claims as personal guarantors of the Lease and may pursue all claims associated with those personal guarantees.

2.

PLAINTIFFS' CLAIMS APPLICABLE TO THE FIRST COLONY SUBSIDIARIES AND THE INDIVIDUAL DEFENDANTS

a.

PIERCING THE CORPORATE VEIL - INSTRUMENTALITY

{34} "It is well recognized that courts will disregard the corporate form or 'pierce the corporate veil,' and extend liability for corporate obligations beyond the confines of a corporation's separate entity, whenever necessary to prevent fraud or to achieve equity." *Glenn v. Wagner,* 313 N.C. 450, 454, 329 S.E.2d 326, 330 (1985); *see also White v. Collins Bldg., Inc.*, 704 S.E.2d 307, 310 (N.C. Ct. App. 2011) (applying the veil-piercing theory against a LLC). However, a court will only "disregard the corporate form and pierce the corporate veil where an individual exercises actual control over a corporation, operating it as a mere instrumentality or tool." *Becker v. Graber Builders, Inc.*, 149 N.C. App. 787, 790, 561 S.E.2d 905, 908 (2002) (internal quotations and citation omitted).

{35} In determining whether to enforce a claim under this theory, North Carolina courts apply the "instrumentality rule," which considers the following:

(1) Control, not mere majority or complete stock control, but complete domination, . . . so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

(2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Glenn*, 313 N.C. at 454–55, 329 S.E.2d at 330 (quoting *B-W Acceptance Corp. v. Spencer*, 268 N.C. 1, 9, 149 S.E.2d 570, 576 (1966)).

{36}   Factors that have been considered by the courts in piercing the corporate veil include (1) inadequate capitalization, (2) non-compliance with corporate formalities, (3) complete domination and control of the corporation so that it has no independent identity, or (4) excessive fragmentation of a single enterprise into separate corporations.  *Id.* at 636, 329 S.E.2d at 198.

{37}   Plaintiffs assert that the structure of the First Colony Subsidiaries gives rise to such a claim with regard to the Individual Defendants as principals and officers of the First Colony Subsidiaries.  Specifically, Plaintiffs allege (1) that the principals "exercised complete dominion and control over [First Colony Subsidiaries]," (2) that such control was used to "perpetrate a wrong and/or fraud against Plaintiffs," and (3) that the aforesaid control proximately caused "monetary losses and interest thereon, inconvenience as well as other incidental and consequential damages."  (V. Am. Compl. ¶¶ 98–99.)  However, these bare legal conclusions are not entitled to the presumption of truth afforded factual allegations on a motion to dismiss.

{38}   While Plaintiffs allege that numerous affiliates occupy the same office, share the same employees, and are insolvent (V. Am. Compl. ¶ 96), they fail to point to specific acts of control or domination by the Individual Defendants over First Colony Subsidiaries that would allow them to take advantage of this arrangement. Plaintiffs allege that Russell, a principal of First Colony, acted as their point of contact, and that Hinson served as the lawyer for the partnership and prepared the

documents for the deal.  (V. Am. Compl. ¶¶ 22, 28, 42.)  However, these allegations merely establish a working relationship, rather than outlining the requisite control and domination to substantiate this claim.  As to Norvet, Plaintiffs only allege legal conclusions, unsupported by actual facts, regarding Norvet's degree of control over the First Colony Subsidiaries.  (V. Am. Compl. ¶¶ 97–98.)  As such, the Court concludes that Plaintiffs have failed to adequately allege that the First Colony Subsidiaries are "a mere instrumentality" of the Individual Defendants sufficient to pierce the corporate veil and hold Russell, Hinson, and Norvet liable for the companies' wrongs.

{39}  For these reasons, the Court **GRANTS** Defendants' Motion to Dismiss as to Plaintiffs' claim of piercing the corporate veil.

b.

BREACH OF CONTRACT

{40}  To sufficiently state a claim for breach of contract, a plaintiff must show "(1) existence of a valid contract and (2) breach of the terms of [the] contract." *Woolard v. Davenport*, 166 N.C. App. 129, 134, 601 S.E.2d 319, 322 (2004) (quoting *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000)).

{41}  Plaintiffs' Amended Complaint alleges that (1) "[i]n return for and in consideration of a ten year Lease by Blue Ridge, . . . the Defendants agreed . . . to provide all capital, assume all risk, and . . . [share] 50% of the profits from the sale of any part of the Templeton Property" (V. Am. Compl. ¶ 21), and (2) Defendants failed to deliver Plaintiffs' share of the proceeds from the sale of the Templeton property (V. Am. Compl. ¶ 107).  The Court concludes that the facts as pled are sufficient to survive Defendants' motion to dismiss Plaintiffs' claim for breach of contract.

{42}  Accordingly, the Court **DENIES** Defendants' Motion to Dismiss as to Plaintiffs' claim for breach of contract.

c.

FRAUD IN THE INDUCEMENT, INTENTIONAL OR NEGLIGENT MISREPRESENTATION, AND NEGLIGENCE

{43}   First, in moving to dismiss the fraud claim, Defendants argue that Plaintiffs have failed to meet the Rule 9 pleading standard requiring "all averments of fraud . . . [to] be stated with particularity." N.C. R. Civ. P. 9(b).

{44}   "The essential elements of fraud are: '(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.'" *Rowan County Bd. of Educ. v. U.S. Gypsum Co.*, 332 N.C. 1, 17, 418 S.E.2d 648, 658 (1992) (quoting *Terry v. Terry*, 302 N.C. 77, 83, 273 S.E.2d 674, 677 (1981)).

{45}   While Rule 9 allows intent and knowledge to be averred generally, the plaintiff must particularly allege the "time, place and contents of the fraudulent representation, the identity of the person making the representation and what was obtained." *Terry*, 302 N.C. at 85, 273 S.E.2d at 678.  In addition, the plaintiff must allege that he justifiably relied on the misrepresentation in that "he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence." *Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 346, 511 S.E.2d 309, 313 (1999).

{46}   Here, Plaintiffs allege that each of the Individual Defendants made certain misrepresentations on specific dates and at specific locations regarding the details of the transactions at issue, and about the company's financial status.  (V. Am. Compl. ¶¶ 21, 24, 32, 34, 35, 39, 42, 110.)

{47}   However, Plaintiffs' allegations are devoid of any facts supporting justifiable reliance.  Although Plaintiffs argue that Defendants falsely held themselves out as being financially stable (V. Am. Compl. ¶ 110), they make no allegations regarding efforts timely taken to investigate this assertion or to learn the true facts through reasonable diligence.  While Plaintiffs allege that Defendants promised access to Defendants' financial records concerning the proposed transaction, Plaintiffs neglected to request such information for nearly two years. (V. Am. Compl. ¶¶ 24, 59.)  When Plaintiffs expressed concerns about the deal before finalizing it, Defendants reassured them they had their "best interests at

heart" (V. Am. Compl. ¶ 35) and Plaintiffs ultimately moved forward with the deal. (V. Am. Compl. ¶ 36.) It was only after the transaction failed to fully materialize that Plaintiffs sought access to the financial information.

{48} Plaintiffs also argue that the changes made to the contract after Plaintiffs signed the document support fraud. Again, Plaintiffs fail to allege justifiable reliance on the representations made with respect to the contents of the contract. Even though Plaintiffs allege that in an email exchange Russell lied about the changes to the contract, they admit the same email contained a copy of the contract with certain changes. (V. Am. Compl. ¶¶ 42–43.) By failing to allege facts in support of their own investigation and due diligence, Plaintiffs have not demonstrated reasonable reliance. As such, Plaintiffs' claim for fraud is fatally deficient.

{49} As with fraud, claims for intentional or negligent misrepresentation and negligence require allegations of justifiable reliance. *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 61, 554 S.E.2d 840, 847 (2001) (dismissing claims for fraud, negligent misrepresentation, and negligence for failing to allege justifiable reliance in spite of the fact that the stricter Rule 9(b) pleading standard does not apply to negligence); *see also Helms v. Holland*, 124 N.C. App. 629, 635, 478 S.E.2d 513, 517 (1996). Because the complaint fails to set out such reliance, Plaintiffs have failed to state a claim for intentional or negligent misrepresentation and for negligence.

{50} Given the above conclusions, the Court need not address Defendants' arguments regarding the personal tort liability of Russell, Norvet, and Hinson, or the applicability of the economic loss rule to these claims.

{51} For the reasons given, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' third, fifth and sixteenth claims for relief, fraud in the inducement, intentional or negligent misrepresentation, and negligence, respectively.

d.

CONSTRUCTIVE FRAUD

{52} Pleading constructive fraud requires less particularity than active fraud. *Sidden v. Mailman*, 137 N.C. App. 669, 677, 529 S.E.2d 266, 272 (2000) (citing *Terry*

*v. Terry,* 302 N.C. 77, 85, 273 S.E.2d 674, 678–79 (1981)). Constructive fraud can be based on a breach of a "confidential relationship rather than a specific misrepresentation." *Terry*, 302 N.C. at 85, 273 S.E.2d at 678–79.

{53} To support a claim of constructive fraud, a plaintiff must sufficiently allege "(1) the existence of a fiduciary duty, and (2) a breach of that duty." *Governor's Club, Inc. v. Governors Club Ltd. P'ship*, 152 N.C. App. 240, 249–50, 577 S.E.2d 781, 788 (2002) (citing *Keener Lumber Co. v. Perry*, 149 N.C. App. 19, 28, 560 S.E.2d 817, 824 (2002)). A fiduciary relationship exists where "there has been a special confidence reposed in one who in equity and good conscious is bound to act in good faith and with due regard to the interests of the one reposing confidence . . . ." *Kaplan v. O.K. Techs., LLC*, 196 N.C. App. 469, 472, 675 S.E.2d 133, 136 (2009). However, "it is not sufficient for plaintiff to allege merely that defendant had won his trust and confidence and occupied a position of dominant influence." *Rhodes v. Jones*, 232 N.C. 547, 548–49, 61 S.E.2d 725, 726 (1950).

{54} Here, Plaintiffs simply allege a fiduciary relationship arising out of contractual duties owed by Defendants. (V. Am. Compl. ¶ 131.) Such a conclusory allegation, unsupported by facts, cannot sustain this claim. Plaintiffs did not point to any language in either the Lease or Operating Agreement which would support a fiduciary duty. In addition, Plaintiffs cannot establish the existence of a blanket duty based on the relationship between the LLC managers and members under the Operating Agreement. *See Kaplan*, 196 N.C. App. at 474, 675 S.E.2d at 137 ("[M]anagers of a limited liability company . . . owe a fiduciary duty to the company, and not to individual members.").

{55} Plaintiffs' allegations describe a land development deal between businessmen with no specific facts to support a special confidence reposed in the Defendants. In support of their claim, Plaintiffs allege that Russell expressly told them they had a relationship of trust and confidence. (V. Am. Compl. ¶ 35.) However, Plaintiffs neglect to allege any facts which establish that this type of relationship actually existed beyond a single statement made during the course of negotiations. In fact, Plaintiffs retained their own counsel to review the documents

prepared by Defendants (V. Am. Compl. ¶ 29) and negotiated back and forth via a series of emails before finalizing the deal. (V. Am. Compl. ¶¶ 33–42.) The Court concludes, therefore, that Plaintiffs have not adequately alleged the existence of a fiduciary relationship with Defendants. As such, Plaintiffs' claim for constructive fraud fails as a matter of law.

{56} In light of its conclusions, the Court does not address Defendants' arguments regarding the personal tort liability of Russell, Norvet, and Hinson or the applicability of the economic loss rule to these claims.

{57} For these reasons, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' fourth claim for relief, constructive fraud.

e.

SECURITIES FRAUD

{58} As to Plaintiff's sixth claim, securities fraud, Defendants argue the Amended Complaint again fails to meet the Rule 9(b) requirement of particularity. (Mem. Law Supp. Defs.' Mot. Dismiss 21–23, 25.)

{59} The North Carolina Securities Act imposes liability upon any person who:

(1) Offers or sells a security in violation of G.S. 78A-8(1), 78A-8(3) . . ., or

(2) Offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading (the purchaser not knowing of the untruth or omission), and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known of the untruth or omission.

N.C. GEN. STAT. § 78A-56 (2011).

{60} A violation of sections 78A-8(1) and (3), pursuant to subsection (1) above, requires that the defendant, in connection with the offer, sale, or purchase of any security, either (1) employ a "device, scheme, or artifice to defraud" or (2) engage in an "act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." N.C. GEN. STAT. §§ 78A-8(1), (3) (2011).

{61} According to the North Carolina Securities Act, the definition of "security" includes a "certificate of interest or participation in any profit-sharing agreement, . . .[and an] investment contract . . . ." N.C. GEN. STAT. § 78A-2(11) (2011).

{62} Plaintiffs allege Defendants induced Plaintiffs to enter into the Operating Agreement that gave Blue Ridge a membership interest in GCL, GCI, and GC and purported to allocate the profits of the companies. (V. Am. Compl. ¶¶ 21, 111, Ex. Q.) And, Defendants "sold" the security in exchange for Plaintiffs' obligations under the Lease. (V. Am. Compl. ¶ 21.) The Court concludes that Plaintiffs have properly alleged the sale of a security.

{63} Plaintiffs allege specific material misrepresentations by Defendants regarding the financial health of First Colony, and regarding the terms of the contract (V. Am. Compl. ¶¶ 18–20, 28, 35, 42, 50–92, 110, 146.), that support Plaintiffs' assertion of a "scheme" or "course of business" that operated to deceive the Plaintiffs in connection with the offer of the security. (V. Am. Compl. ¶¶ 50–92.) These allegations satisfy the requisite particularity requirements of time, place, and individual actions taken, in accordance with Rule 9(b), as discussed above. *See supra* ¶ 45–46. Specifically, Plaintiffs allege statements made by Russell (V. Am. Compl. ¶¶ 35, 42), Hinson's preparation of the altered documents (V. Am. Compl. ¶¶ 28, 85), and Norvet's participation at the initial sales presentation proclaiming First Colony's financial stability and expertise in developing medical parks. (V. Am. Compl. ¶¶ 18–20, 110.) The Court concludes that Plaintiffs have sufficiently pled facts to support its claim under N.C. Gen Stat. section 78A-56.[2]

{64} Defendants also argue that Russell, Norvet, and Hinson should not be included in the tort claims since they acted as agents for First Colony. However, Defendants misapprehend the well-settled rule that "one is personally liable for all torts committed by him, including negligence, notwithstanding that he may have acted as agent for another or as an officer for a corporation." *Strang v. Hollowell*, 97

---

[2] The Court is unaware of any case law asserting that the common law fraud requirement for alleging justifiable reliance extends to statutory claims for securities fraud. And, the Court declines to extend such a requirement to this claim at this stage.

N.C. App. 316, 318, 387 S.E.2d 664, 666 (1990) (citing *Palomino Mills, Inc. v. Davidson Mills Corp.*, 230 N.C. 286, 52 S.E.2d 915 (1949)).

{65} The Amended Complaint contains several allegations supporting the personal liability of the Individual Defendants, as discussed above. In light of these individual acts, the Court concludes that Plaintiffs have stated a claim for securities fraud against the Individual Defendants.

{66} The Court also concludes that Defendants' reliance on the economic loss rule is inapplicable as North Carolina appellate courts have yet to extend the doctrine to bar claims based on fraud. *See Coker v. DaimlerChrysler Corp.*, 172 N.C. App. 386, 405, 617 S.E.2d 306, 318 (2005), *aff'd per curiam*, 360 N.C. 398, 627 S.E.2d 461 (2006) (Hudson, J., dissenting).

{67} Accordingly, the Court **DENIES** Defendants' Motion to Dismiss Plaintiffs' sixth claim for relief, securities fraud.

f.

RESCISSION OF LEASE FOR FAILURE OF CONDITION PRECEDENT

{68} "A condition precedent is a fact or event, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available." *Chem. Realty Corp. v. Home Fed. Sav. & Loan Ass'n of Hollywood*, 84 N.C. App. 27, 37, 351 S.E.2d 786, 792 (1987) (internal quotations and citations omitted). "Conditions precedent are not favored by the law and a provision will not be construed as such in the absence of language clearly requiring such construction." *Id.* (quoting *Cox v. Funk*, 42 N.C. App. 32, 255 S.E.2d 600 (1979)). Allegations regarding the failure of a condition precedent "shall be made specifically and with particularity." N.C. R. Civ. P. 9(c).

{69} Plaintiffs Amended Complaint merely alleges "[t]hat the failure of Defendants to fulfill their agreements with Plaintiffs constitutes a failure of a condition precedent material to the agreements to the parties." (V. Am. Compl. ¶ 152.) Specifically, Plaintiffs take the position that the Lease should be declared void because they have not received the equity ownership interest and profits from

the operation of the Templeton Property or the sharing of profits from the sale of the property, as provided for in the Operating Agreement. (V. Am. Compl. ¶ 150.) Applying this logic would require Plaintiffs to receive their equity interest and Defendants to pay out profits from the sale of the property to trigger Plaintiffs' obligations under the Lease. Plaintiff's equity interest was driven in part by Plaintiffs' lease payments. It would be counter-intuitive for Plaintiffs' equity interest or profits from the sale of the Templeton Property to be a condition precedent to the Plaintiffs' obligations under the Lease absent an express provision in the Lease or Operating Agreement upon which Plaintiffs rely. Plaintiffs have not asserted the existence of any such provision(s) in either the Lease or Operating Agreement. Accordingly, the Court concludes Plaintiffs have not stated a claim for failure of a condition precedent.

{70} Therefore, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' seventh claim for relief, rescission of lease for failure of condition precedent.

g.

ACTION TO CANCEL LEASE AND FOR RESCISSION FOR FAILURE OF CONSIDERATION

{71} "'In order to defeat a contract for failure of consideration, the failure of consideration must be complete and total.'" *Fairfield Harbour Prop. Owners Ass'n v. Midsouth Golf, LLC*, 715 S.E.2d 273, 282 (N.C. Ct. App. 2011) (quoting *Harllee v. Harllee,* 151 N.C. App. 40, 49, 565 S.E.2d 678, 683 (2002)). However, "where a person has been induced to part with something of value for little or no consideration, equity will seize upon the slightest circumstance of fraud, duress, or mistake for the purpose of administering justice in a particular case." *Hinson v. Jefferson*, 24 N.C. App. 231, 237, 210 S.E.2d 498, 502 (1974), *j. modified on other grounds*, 287 N.C. 422, 215 S.E.2d 102 (1975).

{72} Here, Plaintiffs allege no facts demonstrating there was a "complete and total" failure of consideration, *Fairfield*, 715 S.E.2d at 282, or that they received "little or no consideration" under the Lease. *Hinson*, 24 N.C. App. at 237, 210 S.E.2d at 502. Essentially, Plaintiffs allege the deal with Defendants was that,

in consideration of the execution of a ten year Lease by Blue Ridge and the guarantee of the Lease by the individual Doctors, the Defendants agreed and contracted . . . to provide all capital, assume all risk, and as "partners," First Colony and Plaintiffs through A to Z would each receive 50% of the profits from the sale of any part of the Templeton Property [and that] Blue Ridge would also share in a portion of the ownership and profits from the office building . . . .

(V. Am. Compl. ¶ 21.)  In fact, Defendants provided the capital and completed the build-out of the Blue Ridge building as agreed, and Plaintiffs moved in on March 21, 2008.  (V. Am. Compl. ¶¶ 49, 50, 53.)  Furthermore, at the time they filed their Amended Complaint, Plaintiffs were still tenants under the Lease making lease payments.  (V. Am. Compl. Ex. N.)  As stated by Plaintiffs, they merely did not receive as great a benefit from the business arrangement with Defendants as expected, (Pls.' Mem. Law Opp. Defs.' Mot. Dismiss 19–20), not that there was a "complete and total" failure of consideration.  (V. Am. Compl ¶ 57.)

{73}   For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' eighth claim for relief, rescission of lease for failure of consideration.

h.

WAIVER

{74}   Plaintiffs' claim that Defendants waived their right to enforce the Lease through their alleged bad conduct.  (*See* Pls.' Mem. Law Opp. Defs.' Mot. Dismiss 41 (citing *Bell v. Brown*, 227 N.C. 319, 322, 42 S.E.2d 92, 94 (1947)).)  In *Bell*, the plaintiff lessee told the defendant lessor that he was no longer interested in purchasing the property under an option contract that had been executed by the parties.  *Bell*, 227 N.C. at 323, 42 S.E.2d at 94.  Defendant relied on plaintiff's rejection of his right to purchase the property and incurred additional costs by making changes to his construction plan.  *Id.*  When plaintiff then sought to enforce the option, the court found his previous statement amounted to a waiver of his right to purchase under the option agreement. *Id.*

{75}   In *Bell*, the Court wrote: "a written contract, involving an interest in land, may be waived or rescinded by parol, but in the absence of a mutual agreement, an

abandonment, or waiver of such a contract is to be inferred only from such positive and unequivocal acts and conduct as are clearly inconsistent with the contract." Id. at 322.

{76} Here, Plaintiffs do not allege a mutual agreement with Defendants, or any parol representations made by Defendants, constituting a waiver of Defendants' right to enforce the Lease with Plaintiffs.

{77} The Court next considers whether Defendants committed "such positive and unequivocal acts and conduct as are clearly inconsistent with the [lease]." Again, Plaintiffs do not point to any specific terms of the lease agreement that Defendants repudiated or abandoned by acts or conduct that were clearly inconsistent with the Lease.

{78} Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' ninth claim for relief, waiver.

i.

CONFLICT OF INTEREST

{79} Plaintiffs seek relief on the grounds of conflict of interest. The Court is unaware of any a factual or legal circumstance that would form the basis of a separate and independent claim for conflict of interest in North Carolina, and the Court declines to recognize such a claim herein. The Court notes in passing that, ordinarily, conflicts of interest might be relevant evidence in circumstances where a party owed a fiduciary duty to another. In their Amended Complaint, however, Plaintiffs fail to allege a fiduciary relationship existed between the parties, as discussed above.

{80} The Court, therefore, **GRANTS** Defendants' Motion to Dismiss Plaintiffs' tenth claim for relief, conflict of interest.

j.

UNJUST ENRICHMENT

{81} "In order to state a claim for unjust enrichment, the plaintiff's allegations must set forth that a benefit was conferred on the defendant, that the defendant accepted the benefit, and that the benefit was not gratuitous." *Jackson v. Carolina*

*Hardwood Co.,* 120 N.C. App. 870, 872, 463 S.E.2d 571, 573 (1995) (citing *Booe v. Shadrick,* 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988)).

{82}  Plaintiffs allege they assigned to Defendants a right to purchase property at a price far below fair market value, executed a long-term lease at a rate in excess of fair market value, and that Plaintiffs granted these non-gratuitous benefits to get a share of the profits from the property.  (V. Am. Compl. ¶¶ 25, 46, 47, 56, 126.) These allegations satisfy the elements of a claim for unjust enrichment.

{83}  Defendants argue, however, that "if there is a contract between the parties, the contract governs the claim and the moving party may not maintain a claim for unjust enrichment." (Mem. Law Supp. Defs.' Mot. Dismiss 21 (citing *Se. Shelter Corp. v. BTU, Inc.,* 154 N.C. App. 321, 331, 572 S.E.2d 200, 206 (2002)).)

{84}  While the Court notes that several contracts are alleged to be at issue in this case, this fact does not, at this phase of the litigation, bar the allegation of alternative theories of recovery in the Amended Complaint.  *See* N.C. R. Civ. P. 8(e)(2).  Accordingly, the Court concludes that Plaintiffs have sufficiently pled this claim.

{85}  Therefore, the Court hereby **DENIES** Defendants' Motion to Dismiss Plaintiffs' eleventh claim for relief, unjust enrichment.

k.

UNFAIR AND DECEPTIVE TRADE PRACTICES

{86}  "To establish a claim for unfair or deceptive trade practices[,] . . . a plaintiff must show (1) defendant engaged in an unfair or deceptive practice or act, (2) 'in or affecting commerce,' and (3) such act proximately caused actual injury to the plaintiff." *Governor's Club Inc.,* 152 N.C. App. at 250, 567 S.E.2d at 788 (quoting N.C. GEN STAT. § 75-1.1 (2011)).  Activities affecting commerce include "buying, developing and selling real estate," *id.,* as well as "the rental of commercial property." *Mosley & Mosley Builders v. Landin Ltd.,* 97 N.C. App. 511, 518, 389 S.E.2d 576, 580, *disc. rev. denied,* 326 N.C. 801, 393 S.E.2d 898 (1990). Furthermore, to properly allege an unfair or deceptive act, "it is sufficient if a plaintiff shows that a defendant's acts possessed the tendency or capacity to mislead

or created the likelihood of deception." *RD&J Props. v. Lauralea-Dilton Enters.*, 165 N.C. App. 737, 748, 600 S.E.2d 492, 501 (2004).

{87}   Here, the facts supporting Plaintiffs' claim for securities fraud can similarly be relied upon to support the unfair and deceptive practices claim. (V. Am. Compl. ¶¶ 18–20, 28, 35, 42, 50–92, 110.) Further, by developing and renting the Templeton Property in connection with the alleged actions, the practice is "in or affecting commerce." Lastly, Plaintiffs allege Defendants' fraudulent acts deprived Plaintiffs of profits promised under the Operating Agreement. (V. Am. Compl. ¶ 56.) The Court concludes, therefore, that Plaintiffs have sufficiently pled facts alleging unfair and deceptive trade practices.

{88}   In light of its conclusions, the Court **DENIES** Defendants' Motion to Dismiss Plaintiffs' twelfth claim for relief, unfair and deceptive trade practices.

l.

PUNITIVE DAMAGES

{89}   In their fourteenth claim, Plaintiffs seek to place Defendants on notice that punitive damages are sought in this matter.

{90}   "Ordinarily punitive damages are not recoverable. In the proper case, however, punitive damages are permitted on public policy grounds." *Terry*, 302 N.C. at 88, 273 S.E.2d at 680 (internal citations omitted). "'In North Carolina actionable fraud . . . is well within North Carolina's policy underlying its concept of punitive damages.'" *Id.* (alteration original) (citation omitted).

{91}   Having found sufficient facts alleging securities fraud and unfair and deceptive trade practices, the Court concludes that Plaintiffs have also adequately stated a claim for punitive damages.

{92}   The Court, therefore, **DENIES** Defendants' Motion to Dismiss Plaintiffs' fourteenth claim for relief, punitive damages.

m.

CIVIL CONSPIRACY

{93}   It is well recognized that "there is not a separate civil action for civil conspiracy in North Carolina." *Dove v. Harvey*, 168 N.C. App. 687, 690, 608 S.E.2d

798, 800 (2005), *disc. rev. denied*, 360 N.C. 289, 628 S.E.2d 249 (2006) (citing *Shope v. Boyer*, 268 N.C. 401, 150 S.E.2d 771 (1966)). However, a plaintiff may assert the claim of civil conspiracy to "associate the defendants together [such that] the acts and conduct of one might be admissible against all." *Id.* (quoting *Fox v. Wilson*, 85 N.C. App. 292, 300, 354 S.E.2d 737, 742–43 (1987)).

{94} "In order to state a claim for civil conspiracy, a complaint must allege 'a conspiracy, wrongful acts done by certain of the alleged conspirators, and injury.'" *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 537 S.E.2d 248, 265 (2000) (quoting *Henry v. Deen*, 310 N.C. 75, 87, 310 S.E.2d 326, 334 (1984)).

{95} As to wrongful acts, the Court previously concluded that Plaintiffs alleged sufficient facts demonstrating unfair and deceptive trade practices and securities fraud. Plaintiffs further allege an agreement encompassing those unlawful acts existed between the Defendants (V. Am. Compl. ¶ 177), which deprived Plaintiffs of profits arising out of the Operating Agreement. (V. Am. Compl. ¶ 56.) Accordingly, the Court concludes Plaintiffs have sufficiently stated a claim for civil conspiracy.

{96} Therefore, the Court **DENIES** Defendants' Motion to Dismiss Plaintiffs' fifteenth claim for relief, civil conspiracy.

n.

EQUITABLE ESTOPPEL

{97} Plaintiffs seek to rely on equitable estoppel to rescind and enjoin enforcement of the Lease. However, in its Motion, Defendants do not assert any claim or affirmative defense under the Lease.

{98} This Court is not aware of any North Carolina case in which equitable estoppel has been asserted as the basis of an independent affirmative claim for relief. Rather, like the case cited by Plaintiffs in support of its claim, equitable estoppel provides a defense to bar enforcement of opposing claims or affirmative defenses. *See Friedland v. Gales*, 131 N.C. App. 802, 806, 509 S.E.2d 793, 796 (1998) (allowing equitable estoppel claim to bar statute of limitations defense). This Court declines to recognize equitable estoppel as an affirmative claim for relief at this stage.

{99} However, given that Defendants have yet to file an answer in this case, the Court's ruling here does not bar Plaintiffs' from later asserting this claim in response to any affirmative defenses or counterclaims raised by Defendants.

{100} For this reason, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' seventeenth claim for relief, equitable estoppel, without prejudice.

3.

PLAINTIFFS' CLAIMS APPLICABLE TO COLONY DEVELOPMENT PARTNERS, LLC ("CDP"), AND COLONY MANAGEMENT, INC. ("CM")

{101} Plaintiffs allege that First Colony assigned its contractual rights and duties to CDP and CM in the summer of 2008. (V. Am. Compl. ¶ 55.) Taken as true, Plaintiffs' allegation would allow Plaintiffs to assert claims arising out of the duties enumerated in those assignments.

{102} Defendants contend that Plaintiffs fail to allege any connection giving rise to a duty owed by CDP and CM to Plaintiffs. However, where an assignment exists, "the other party to the original contract may sue the assignee as a third-party beneficiary of his promise of performance." *Rose v. Vulcan Materials, Co.*, 282 N.C. 643, 663, 194 S.E.2d 521, 534 (1973).

{103} This Court concludes that the assignment is properly alleged such that Plaintiffs should have the opportunity during discovery to uncover exactly what, if any, liability CDP and CM may have to Plaintiffs.

{104} The Court, therefore, **DENIES** Defendants' Motion to Dismiss Plaintiffs' claim incorporating certain claims from Section I of the Amended Complaint against CDP and CM.

4.

CLAIMS APPLICABLE TO ALL DEFENDANTS

a.

CONSTRUCTIVE TRUST

{105} "[A] constructive trust is a fiction of equity, brought into operation to prevent unjust enrichment through the breach of some duty or other wrongdoing." *Roper v. Edwards*, 323 N.C. 461, 464, 373 S.E.2d 423, 424–25 (1988). Although this Court concluded no fiduciary duty has been alleged, Plaintiffs did properly plead an

unjust enrichment claim to support this request for relief.

{106} Defendants contend the election of remedies doctrine bars pleading this form of relief. (Mem. Law Supp. Defs.' Mot. Dismiss 29–30.)

{107} "The 'whole doctrine of election [of remedies] is based on the theory that there are inconsistent rights or remedies of which a party may avail himself, and a choice of one is held to be an election not to pursue the other.'" *Richardson v. Richardson,* 261 N.C. 521, 530, 135 S.E.2d 532, 539 (1964) (quoting *Machine Co. v. Owings*, 140 N.C. 503, 53 S.E. 345 (1906)).

{108} However, this doctrine does not apply to pleadings, as the Rules of Civil Procedure allow parties to plead in the alternative. N.C. R. Civ. P. 8(e)(2) ("A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or on equitable grounds or on both.").

{109} Accordingly, the Court **DENIES** Defendants' Motion to Dismiss Plaintiffs' claim for imposition of a constructive trust.

b.

INDEPENDENT RECEIVER

{110} Plaintiffs seek appointment of an independent receiver to receive and distribute rents and to preserve GCL, GCI, and GC. (V. Am. Compl. ¶ 208.)

{111} "[A] receiver may be appointed . . . when plaintiff establishes an apparent right to specific property . . . where specific property, or its rents and profits, are in danger of being lost or materially injured or impaired." *Murphy v. Murphy*, 261 N.C. 95, 101, 134 S.E.2d 148, 153 (1964). More specifically, receiverships are allowed by statute for unfair and deceptive trade practices where "restitution is sought for violations of G.S. 75-1.1." N.C. GEN. STAT. § 1-502(5) (2011).

{112} As previously discussed, Plaintiffs have alleged both a right to receive a share of rents and a claim for unfair and deceptive trade practices. Accordingly, the Court concludes this claim is proper.

{113} The Court, therefore, **DENIES** Defendants' Motion to Dismiss Plaintiffs' claim for appointment of an independent receiver.

c.

## REQUEST FOR ACCOUNTINGS

{114} In this claim, Plaintiffs seek access to records and an audit of the Greenway Companies (GCL, GCI, and GC) by an independent third party pursuant to Section 11.2 of the Operating Agreement. (V. Am. Compl. Ex. Q at 27.) By statute, all members of a limited liability company "shall be bound by any operating agreement." N.C. GEN. STAT. § 57C-3-05 (2011). Here, the Operating Agreement expressly allows for any member of the limited liability company to request either or both of the actions sought by Plaintiffs here. (V. Am. Compl. Ex. Q at 27.)

{115} In their Amended Complaint, Plaintiffs reference and include a letter dated February 23, 2011, which called for the inspection of records. (V. Am. Compl. Ex. S.) Since the Operating Agreement does not specify any requirements for a proper demand under Section 11.2, Defendants' failure to submit to Plaintiffs' request may constitute a further breach of contract under the Operating Agreement. As such, the Court concludes that Plaintiffs' properly assert this claim for relief pursuant to their rights under the Operating Agreement.

{116} For the reasons given, the Court **DENIES** Defendants' Motion to Dismiss Plaintiffs' claim for a request for accountings.

d.

## DECLARATORY JUDGMENT

{117} Defendants make no specific argument as to why this claim should be dismissed, and the Court sees no reason to find that it fails to state a claim pursuant to Rule 12(b)(6). (Mem. Law Supp. Defs.' Mot. Dismiss 30.)

{118} "Where a complaint requesting declaratory relief alleges the existence of a real controversy arising out of the parties' opposing contentions and respective legal rights, it is normally sufficient." *Fuller v. Easley*, 145 N.C. App. 391, 398, 553 S.E.2d 43, 48 (2001) (internal quotations and citations omitted).

{119} This Court, having found sufficient facts to allege a real controversy as to the Lease, concludes dismissal of this claim would be improper.

{120} For the reasons given, the Court hereby **DENIES** Defendants' Motion to Dismiss Plaintiffs' claim for declaratory judgment.

e.

PRELIMINARY INJUNCTION

{121} Plaintiffs seek the issuance of a preliminary injunction to protect their possessory interests in the medical office that is the subject of this litigation.  They allege that Defendants have threatened ejection for non-payment of certain fees under the terms of the Lease.  (V. Am. Compl. ¶ 215.)

{122} "[A] prayer for relief in [a] complaint may constitute a sufficient motion for a preliminary injunction, and . . . a separate or additional motion is not necessarily required." *Collins v. Freeland*, 12 N.C. App. 560, 562, 183 S.E.2d 831, 832 (1971).  However, Business Court Rule 15.2 requires that "[a]ll motions, unless made orally during a hearing or trial, . . . be in paper writing or electronic form and . . . be accompanied by a brief . . . set out in a *separate* paper."  BCR 15.2 (2006) (emphasis added).

{123} Plaintiffs stated a prayer for relief in their Amended Complaint, but have not filed a supporting brief pursuant to the Business Court Rules.  Therefore, a motion for injunctive relief is not properly before the Court at this time.

{124} Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs fifth claim in this section, Motion for Preliminary Injunction, without prejudice.

5.

DERIVATIVE CLAIMS

{125} Plaintiffs alternatively raise derivative claims on behalf of GCL, GCI, and GC.  (V. Am. Compl. ¶¶ 225–245.)  Defendants argue, and this Court agrees, that Plaintiffs have not satisfied the statutory requirements for bringing such an action. (Mem. Law Supp. Defs.' Mot. Dismiss 30.)

{126} By statute, a member of a limited liability company may bring a derivative action in accordance with the following conditions:

> (1) The plaintiff does not have the authority to cause the limited liability company to sue in its own right; and

(2) The plaintiff (i) is a member of the limited liability company at the time of bringing the action, and (ii) was a member of the limited liability company at the time of the transaction of which the plaintiff complains . . . .

(b) The complaint shall allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the managers, directors, or other applicable authority and the reasons for the plaintiff's failure to obtain the action, or for not making the effort.

N.C. GEN. STAT. §§ 57C-8-01(a)–(b) (2011).

{127} Plaintiffs' Amended Complaint fails to sufficiently allege derivative claims because it does not state with particularity the actions sought from the Defendants or the efforts made in seeking those actions. Rather, Plaintiffs allege their counsel sent a letter, dated February 23, 2011, to Defendants "advis[ing] of the filing of the Complaint and the relief sought." (V. Am. Compl. ¶ 232, Ex. S.) The Court concludes that the letter dated February 23, 2011, and allegedly delivered contemporaneously with the filing of this action, is insufficient to meet the requirements of section 57C-8-01. Furthermore, because the Amended Complaint also fails to allege with particularity Plaintiffs' reasons for not making an effort to obtain the desired action from the Defendants, Plaintiffs are not entitled to relief by way of a derivative action.

{128} Therefore, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' derivative claims contained in section IV of the Amended Complaint, without prejudice.

V.

CONCLUSION

{129} For the reasons stated herein, the Court **GRANTS** in part and **DENIES** in part Defendants' Motion to Dismiss pursuant to Rule 12(b)(6). Accordingly, the Court **DISMISSES** with prejudice Plaintiffs' claims for piercing the corporate veil, fraud in the inducement, intentional or negligent misrepresentation, negligence, constructive fraud, rescission of the lease for failure of condition precedent, rescission of the lease for failure of consideration, waiver, and conflict of interest as

to all Defendants; **DISMISSES** without prejudice Plaintiffs' claims for equitable estoppel, preliminary injunction and all derivative claims as to all Defendants.

**SO ORDERED,** this the 3rd day of October, 2012.